O'Connor & Harder Range and Furnace Company, Respondent, v. Frank Alexe; Jos. Schnaider Brewing Company, Interpleader, Appellant.

**St. Louis Court of Appeals, December 6, 1887.**

1. Instructions.—Instructions which are based on conjecture merely, and not on evidence, should be refused.

2. —— Notice.—In the absence of evidence tending to show notice, it is error to submit the question of notice to the jury.

3. Executions—Sales—Burden of Proof.—To subject property in the hands of a third person to execution under a judgment for its purchase price, the plaintiff must show that the person who purchased the property of the vendee was not a purchaser in good faith, or had notice that the property was not paid for in whole or in part.

Appeal from the St. Louis Circuit Court, Daniel Dillon, Judge.

*Reversed and remanded.*

Broadhead & Haeussler, for the appellant: A mortgagee is a purchaser for value. *Brocking v. Straeb,* 17 Mo. App. 303. The burden of proof was on the plaintiff to show that the interpleader had knowledge of the fact that the purchase price had not been paid. *Albert v. Besel,* 88 Mo. 150; *Bolckow Mill Co. v. Frazer,* 22 Mo. App. 109.

Eugene C. Slevin, for the respondent: The cause having been submitted to the jury under proper instructions, the appellate court will not weigh the evidence to see whether the jury came to a correct conclusion on the facts. *Johnson v. Building Co.,* 23 Mo. App. 546; *Norton v. City of Moberly,* 18 Mo. App. 457; *St. Louis Type Foundry v. McCann,* 68 Mo. 195. Fraud is not to be presumed; but anything which sat-

isfies the mind and conscience of its existence is suffi-
cient.    Cooley on Torts, 475; *Frederick v. Allgaier*, 88
Mo. 598.

Lewis, P. J., delivered the opinion of the court.

The plaintiff sold and delivered to the defendant,
Alexe, six stoves, for cash, payable on delivery.    Alexe
paid twenty-five dollars on his purchase, leaving a
balance unpaid.    The record does not inform us of the
date of this sale, or the amount of the balance remain-
ing due to the seller.    Afterwards, on November 12,
1885, Alexe executed and delivered to the interpleader,
Jos. Schnaider Brewing Company, a chattel mortgage,
conveying the stoves and other personal property, to se-
cure the payment of a promissory note for seven hundred
and fifty dollars, due one day after date.    On December 3,
1885, the plaintiff sued Alexe by attachment before a
justice of the peace, and caused the stoves to be seized
by the constable.    The Brewing Company interpleaded,
claiming the stoves under its chattel mortgage.    The
same party took an appeal to the circuit court, where
the verdict and judgment were for the present plaintiff,
and against the interpleader.    The controversy turns
upon the application of section 2353, Revised Statutes,
which provides as follows:

"Personal property shall, in all cases, be subject to
execution on a judgment against the purchaser for the
purchase price thereof, and shall in no case be exempt
from such judgment and execution, except in the hands
of an innocent purchaser for value, without notice of
the existence of such prior claim for the purchase
money."

At the trial the interpleader introduced in evidence
the chattel mortgage, the record of the attachment pro-
ceedings, and the oral testimony of two witnesses, as
follows:

Frank Sullivan testified: "I am a bartender, at
present engaged at the Dunn saloon, on Fifth and
Market streets.    For some time prior to November 19,

1885, I tended bar for Frank Alexe, at the southeast corner of Seventh and Olive streets. I was there when he got the stoves from O'Connor & Harder. He got from them one stove for the saloon, one for the parlor upstairs, three stoves for three rooms upstairs, and, I believe, one hall stove. They were the same that are included in the chattel mortgage, and the same stoves that were levied on by the constable in the attachment suit. They had been there some time before the date of the chattel mortgage. On the morning of the nineteenth of November, 1885, Mr. Alexe paid me off, and told me he had turned over the property included in the chattel mortgage to Mr. Link, as agent for the Jos. Schnaider Brewing Company, the mortgagees, and had sold the place and the balance of the goods to Mr. Link. He brought Mr. Link behind the counter, and told me that he was the proprietor. Mr. Link said he would engage me, but that he would want to close up first and get things in order, and would open up at twelve o'clock. Everybody left the place but Mr. Link, who closed the doors and had Alexe's signs taken down. I came back at twelve o'clock, but he told me he was not ready to open up then, but to come back at five. I was there about four, when the sheriff levied on some of the goods, and took possession of the place, and the constable levied on these stoves. The next day the place was turned over to Mr. Link by the sheriff, and I stayed there with him, as one of his barkeepers, until he sold the place, and I continued with his successor. I did not know whether Mr. Alexe had paid for the stoves or not. They were delivered and set up by O'Connor & Harder.''

E. J. O'Connor testified : That he was a member of the O'Connor & Harder Range and Furnace Company; that Alexe had bought the stoves in question from them, for the prices mentioned in the account; that they were to be paid for on delivery; that he had only paid twenty-five dollars on account of them, and

the balance was due; that Mr. Link was in possession
of the place and goods when the levy was made. Wit-
ness was asked: "Q. Did the Schnaider Brewing
Company know that Alexe had not paid for the stoves?
A. Alexe told me that, at the time he gave the chattel
mortgage to Link, he informed Link that the stoves
were not paid for."

The bill of exceptions here proceeds thus: "To
which answer interpleader objected at the time, as in-
competent and being hearsay, and being a statement by
mortgageor in the absence of the mortgagee, long after
the giving of the chattel mortgage and the taking
possession thereof, and moved to strike the same out;
which objection the court sustained."

The court refused two instructions asked for by the
interpleader, and gave the two following, of which the
first was of its own motion, and the second was on
behalf of the plaintiff. It is proper to explain here
that, in consequence of a transposition of the names and
positions of the parties, respectively, which had crept
into the record, the word, "plaintiff," as used in the
instructions, was intended to designate the Joseph
Schnaider Brewing Company, the interpleader.

" The court instructs the jury, if they believe, from
the evidence, that Alexe mortgaged the stoves in ques-
tion to the Joseph Schnaider Brewing Company to
secure the payment of a debt due by him to it, before
said stoves were levied upon by the constable in the suit
of O'Connor against Alexe, their verdict should be for
the plaintiff, unless they further find that the Joseph
Schnaider Brewing Company had actual knowledge that
said stoves had not been paid for."

"If the jury believe, from the evidence, that the
Schnaider Brewing Company, or its agents, knew that
the stoves in question had not been paid for by F.
Alexe, at the time of the execution of the chattel mort-
gage by said Alexe to said Schnaider Brewing Company,
they will find for the defendant." (The word, "defend-
ant," is here intended to designate the O'Connor &

Harder Company, the record plaintiff in the attachment suit).

The interpleader excepted to the giving of these instructions, and here insists that they were improperly given. Waiving all inquiry into their correctness, as abstract propositions of law, the more vital question is, whether they were founded on any evidence that was submitted to the jury? By rule 14 of this court, which is literally copied from rule 7 in the practice of the Supreme Court, the presumption arises that all the evidence given in the trial, having any bearing on the point made by the instructions, is contained in the bill of exceptions. *Silvey v. Sumner*, 61 Mo. 256; *Cummings v. Denny*, 6 Mo. App. 602. We have given above all the testimony that appears in the bill of exceptions in this case. Yet not a syllable is there, tending to prove that knowledge on the part of the interpleader which the instructions make essential to authorize the verdict, as rendered by the jury. The only reference made to such a knowledge appears in a statement of the witness, O'Connor, which was properly ruled out by the court. Instructions must not be given upon supposed facts which do not appear in the evidence. *Boatman's Savings Bank v. Overall*, 16 Mo. App. 510; *Skyles v. Bollman*, 85 Mo. 35; *Bowen v. Railroad*, 75 Mo. 426.

It is conceded in argument that the burden of proof was on the plaintiff to show that the interpleader, at the time of taking the chattel mortgage, had knowledge of the fact that the stoves had not been paid for. Learned counsel for the plaintiff says that the attention of the jury was directed to the fact that Mr. Link, "who knew more concerning the affair than any one else," was not called to testify; the inference being that it would doubtless have appeared, from his testimony, that the interpleader knew, when taking the chattel mortgage, of Alexe's delinquency touching the payment for the stoves. But this suggestion, however true it may be, furnishes not the least justification for the instructions,

or for the verdict given under their influence. Jurors have no authority to found their verdict on a mere conjecture of what testimony might have been given, but was not, by a person who was not called as a witness. It is also suggested that the jury were impressed by the shortness of the time beween the purchase of the stoves and the giving of the chattel mortgage. The record gives us no light as to the length or shortness of the time which so elapsed. Nor does the record give any hint that the interpleader knew when Alexe had bought the stoves. But, in any view of the case, the shortness of the time would not affect the rights of the interpleader, without some proof tending to show a knowledge of Alexe's indebtedness for the purchase money unpaid. Fraud is not to be presumed, but must be proved, by a fact, or by a series of facts taken together, which may be deemed reasonably inconsistent with fair dealings. No single fact will suffice, when, like the one under consideration, it may co-exist quite as well with fairness as with wrongful intent.

In the state of the record before us, it appears that the trial court gave instructions which were not warranted by any facts appearing in the evidence. For this reason the judgment will be reversed and the cause remanded. The other judges concur.