UNION NATIONAL BANK OF MINNEAPOLIS *vs.* FRANCES A. PRAY and others.

July 21, 1890.

**Fraudulent Conveyance—Husband and Wife.—**Evidence considered, and *held* sufficient to sustain the finding of fact that conveyances, vesting in a wife title to real estate previously belonging to her husband, were made in good faith, and without intent to defraud his creditors.

Appeal by plaintiff from a judgment of the district court for Hennepin county, where the action was tried by *Rea,* J.

*Gordon E. Cole* and *Cross, Carlton & Cross,* for appellant.

*Koon, Whelan & Bennett* and *Torrance & Fletcher,* for respondents.

GILFILLAN, C. J.   Action to set aside two deeds, both executed March 25, 1879, one by the defendants Otis A. Pray and Frances A. Pray, his wife, to John H. Randall, and one by the latter and Julia B., his wife, to the defendant Frances A., the effect of which deeds was to vest in her the title to 226 acres of land lying north of, and near, and now within the corporate limits of, the city of Minneapolis, which land prior thereto was the property of Otis A. Pray, on the ground that they were made for the purpose of hindering, cheating, and defrauding the creditors of said Otis A. Pray.   The cause was tried by the court below without a jury, and findings of fact and of conclusions of law filed, and judgment ordered and entered for the defendants.   One finding of fact was that the deeds were made in good faith and for a valuable consideration, to transfer to Frances A. the title to the land, and without any intent or purpose on the part of said Otis A. Pray or said Frances A. Pray to hinder, delay, or defraud the plaintiff, or any creditors of said Otis A. Pray, either ex-

isting at the time of said conveyances or subsequent thereto. As such conveyances can be avoided only by reason of a fraudulent intent as to creditors existing or prospective of the grantor, and as the statute (Gen. St. 1878, *c.* 41, § 20) declares that in such cases the question of fraudulent intent shall be deemed a question of fact and not of law, this finding, if sustained, determines the case.

The appellant claims that the finding is not sustained by the evidence, and we have read the evidence to ascertain whether, within the rules upon which this court determines such a question, the finding is sustained. A good deal of the evidence bearing on the question of intent is conflicting. Evidence on the part of plaintiff that Otis A. Pray, subsequent to the conveyances, claimed and represented the property to be his, is directly contradicted by evidence on the part of the defendants; and evidence on the part of defendants, tending to show that during the time when it was giving credit to Otis A. the plaintiff knew the property belonged to Mrs. Pray, is directly contradicted by evidence on the part of plaintiff. We must assume that the court below, as was within its special province to do, determined which set of witnesses to believe, and that it determined such cases of conflicting evidence in favor of the defendants, and its decision on those matters cannot be disturbed. We will not further refer to the details of fact thus testified to, but confine ourselves to the facts either conceded to exist, or shown beyond any reasonable controversy.

As this plaintiff was not a creditor of Otis A. Pray at the time of the execution of the deeds, (it did not, indeed, become such for several years after it,) the mere fact that there was or was not an intent to defraud then existing creditors would not be conclusive of the case. The question is of the intent as to future creditors. But under the peculiar circumstances of the case the question of intent as to existing creditors has an important bearing on the question of intent as to future creditors. The court finds there was no intent to hinder, delay, or defraud existing creditors. No one could claim that finding is not supported by the evidence. Otis A. Pray had up to that time been doing, and was then doing, a prosperous business. He was solvent, having, as the evidence abundantly shows, property exclusive of

that in question here largely in excess of his liabilities, and, although the evidence as to the amount of the consideration is not entirely clear, there was enough to justify a finding that there was a valuable consideration, to an amount so nearly the then value of the property that the difference would, under the existing circumstances, have hardly justified a question as to the good faith of the transaction. Had the deeds gone on record at once, we think no then creditor of Otis A. would have thought to question the transaction.

The circumstances throwing suspicion on the transaction as it might affect future creditors were that the deeds vesting the title in Frances A. were not recorded till 1886; that Otis A. continued to exercise the same apparent possession and control of the land up to 1886 as before the execution of the deeds, paying all expenses of labor, supplies, repairs, taxes, and insurance, and disposing of the produce, and not accounting in any way to Mrs. Pray; and that in 1886, when he found it necessary to give security for debts then owing by him and for advances that he expected to procure, the two joined in a trust-deed of part of the land to defendant Harmon as such security, and that he had the buildings on the land insured in his name up to 1886. These circumstances, standing alone, suggest that the deeds were executed, not for the purpose of *bona fide* transferring the property, but only to be used whenever Otis A. might have occasion to prevent his creditors reaching it, the property to be in the mean time apparently his as a basis or means for obtaining credit. Without explanation, these circumstances, taken together, would be very cogent evidence of an intent to defraud future creditors of Otis A. As bearing on their force as evidence of a fraudulent intent, there was evidence that, at the time of executing the deeds, Otis A. was not intending to embark in any new or hazardous business by which his indebtedness would be increased. In explanation of the fact that the deeds were not recorded, both of the Prays testified that there was no agreement or understanding at any time between them that they should be withheld from record, or that Mr. Pray should remain apparent owner of the property, and Mrs. Pray testified that the failure to record was owing merely to the fact that, until she was advised of it upon the execution of the trust-deed to

Harmon, she did not appreciate the importance of recording them, and did not understand it to be necessary. If this was true, (and it was for the trial court to determine whether it was or not,) it deprived the failure to record of much of its significance as evidence of fraudulent intent.

The fact that she joined in the trust-deed of part of the land, to secure debts against or future advances to him or the firm or corporation in which he was the person mainly interested, would hardly, by itself, be evidence of fraudulent intent in the execution of the deeds in 1879. It is not uncommon for one person to mortgage his property to secure the debt of another, and especially it is not uncommon for a wife to do so on behalf of her husband. And there was also evidence that it was understood between the husband and wife that the trust-deed was to be only a temporary arrangement, to continue only until he should be able to conclude then pending negotiations by him by which he expected to raise money, which would make the trust no longer necessary. As to the policies of insurance being in the name of Mr. Pray, instead of hers, he testified, in effect, that it occurred through inadvertence on his part. This may have been true. It was for the court below to determine whether it was or not. The fact that he continued in charge of the property apparently for himself, doing everything in his own name, and rendering no account to her, would have been, had there been no relationship between them, almost irresistible evidence that, as between them, it was regarded as his property. But such apparent possession and control in case of a husband in charge and management of his wife's lands, while it may be evidence that the lands are really regarded as his, (though the title may be in the wife,) is not so strong as it would be in the case of strangers to each other. Had the land been a source of profit, his receipt and appropriation to his own use of such profit, without accounting to her, would have made much stronger any inference arising from his charge and control that the lands were regarded as his. According to his testimony, no profits were derived from the land, the expenses slightly exceeding the receipts from it. And up to 1884 the personal property on the land, and with which it was used as a farm,

belonged to him.  Such facts and the relationship between the parties are items of evidence tending to rebut the inference from his apparently exclusive possession, that the conveyances in 1879 were fraudulent.  Whether they were sufficient to do away with that inference, and whether the explanations of the other suspicious circumstances to which we have alluded were true, and their effect, were for the trial court to determine.  We cannot say there was not evidence to sustain its determination.

Judgment affirmed.