WALTER C. FULLINGTON *vs.* NORTHWESTERN IMPORTERS' AND BREEDERS' ASS'N *et al.*

Argued Jan. 29, 1892.  Decided March 7, 1892.

**Deed Made to Defraud Creditors—Who may Avoid It.**—A subsequent creditor cannot avoid a conveyance of his debtor merely because it was made with intent to defraud creditors existing at the time of its execution.

Appeal by plaintiff, Walter C. Fullington, from a judgment of the district court of Hennepin county, *Hicks,* J., entered September 20, 1891.

On March 11, 1886, plaintiff conveyed to the Northwestern Importers' & Breeders' Association land in Minnesota subject to a mortgage, which it assumed and agreed to pay.  The mortgage was foreclosed and the land sold October 11, 1889, but it did not bring enough to pay the mortgage debt; and plaintiff was compelled to, and did on January 16, 1890, pay the deficiency, $6,369.49.  He brought this action August 5, 1890, to recover this sum of that corporation and of Valentine G. Hush, as one of its stockholders, alleging that Hush held $10,000 stock in that insolvent corporation.  Plaintiff also garnished Daniel Fish, claiming that Fish held property belonging to Hush.

It appeared that on December 20, 1886, Hush made a common-law assignment of nearly all his property, and delivered it to his brother, Alfred B. Hush, in trust to pay his creditors, and soon thereafter left this state.  His then creditors assented and became parties to this assignment, and on their application Daniel Fish was on May 3, 1890, appointed trustee in the place and stead of Alfred B. Hush, and received from him the unadministered part of the assigned property.  To obtain this property was the object sought by the garnishment.  Fish appeared, was examined, and denied that the property belonged to Valentine G. Hush.  Plaintiff obtained leave, and filed a supplemental complaint against Fish.  He answered, and the issues were brought to trial May 20, 1891, before the court without a jury.  Findings were made that Valentine G. Hush was not a debtor to

plaintiff when he made the assignment to his brother, and that the assignment was not fraudulent or void as to creditors who became such after it was made. Judgment was entered on these findings that plaintiff take nothing by this garnishee action, and that Fish recover of him $15.75 costs. From that judgment plaintiff took this appeal.

*Haynes & Chase,* for appellant.

The assignment in question is void on its face, in that it attempts to create a trust which is expressly prohibited by 1878 G. S. ch. 43, § 1. It provides that Alfred B. Hush shall take and receive all the property in trust for the purpose of converting the same by sale, pledge, mortgage, or otherwise. It follows that the title to the property still remains in the defendant Hush subject to appellant's garnishment lien. It is partial, and not general. It does not turn over all of the debtor's unexempt property. He reserves a membership in the Chamber of Commerce of Minneapolis, and his stock in the Northwestern Importers' & Breeders' Association. *May* v. *Walker,* 35 Minn. 194; *Olson* v. *O'Brien,* 46 Minn. 87; *Bennett* v. *Ellison,* 23 Minn. 242, 253.

A conveyance fraudulent at the time of making it may be avoided in favor of subsequent creditors. *Parkman* v. *Welch,* 19 Pick. 231.

The reason for this rule is that the prime object of an assignment is to temporarily sequester the assets of the insolvent until they can be converted and distributed, and that, where the conveyance is void on its face, no such sequestration can occur, and hence the estate remains open to attack by any creditor, regardless of the time when his claim may have arisen. Such is substantially the doctrine declared by this court in an early day. *Banning* v. *Sibley,* 3 Minn. 389, (Gil. 282.) 1 Amer. Lead. Cas. (5th Ed.) 42, 43.

*Little & Nunn,* for respondent.

For the purpose of this argument, we may concede that this trust deed was void as against the existing creditors of Valentine G. Hush, who were not parties to it, or have not consented to the same. But every creditor of Hush existing at the time of its execution was a party and consented to that deed, and it was not only valid as to Hush, but as to those creditors. The title to the prop-

erty now in question, as between the parties to the deed, passed by delivery to the trustee, and the title to the personal property passed by the judgment and delivery from Alfred B. Hush to Fish, so far as the parties were concerned. In the case of *Banning* v. *Sibley*, 3 Minn. 389, (Gil. 282,) it was held, and the decision was based upon the holding, that there never was any conveyance or assignment of the bonds by the company to Sibley, but that he simply held them as the agent of defendant. *Harlan* v. *Maglaughlin*, 90 Pa. St. 293. About the only state tending to sustain such a doctrine as appellant contends for is Massachusetts.

There are cases where a subsequent creditor can attack a prior fraudulent conveyance, but the distinction is that a voluntary conveyance is, as to existing creditors, presumptively fraudulent, while as to subsequent creditors the burden of proving an intent to commit a fraud rests on the creditor. A subsequent creditor must show that the voluntary conveyance was made in contemplation of future indebtedness, and the actual fraud of the grantor and grantee in such conveyance must be shown. *Seward* v. *Jackson*, 8 Cow. 406; *Dygert* v. *Remerschnider*, 32 N. Y. 629, 648; *Todd* v. *Nelson*, 109 N. Y. 316, 327; *Sheppard* v. *Thomas*, 24 Kan. 780; *Voorhis* v. *Michaelis*, 45 Kan. 255.

GILFILLAN, C. J. The nature of the instrument under which the garnishee defendant claims title to the property is, as the plaintiff claims it to be, a common-law assignment for the benefit of creditors. Although it is not very clear that the assignor had at its date any creditors who did not assent to by signing it, we may assume that he had, and that, as to them, the assignment is fraudulent, and consequently void. There is no evidence of any intent to defraud any who might become creditors after its execution; that it was made with any reference to or in contemplation of future debts of the assignor; and there is nothing in its character, nor in the acts of the parties under it, to make it operate as a fraud upon such creditors. The plaintiff is a subsequent creditor, so that the question is presented, can a subsequent creditor avoid a conveyance by his debtor, not intended to nor operating to defraud him, on the ground that it was executed with intent to defraud existing credit-

ors?   This court has always held he cannot.   *Bruggerman* v. *Hoerr,* 7 Minn. 337, (Gil. 264;)   *Stone* v. *Myers,* 9 Minn. 303, (Gil. 287;) *Sanders* v. *Chandler,* 26 Minn. 273, (3 N. W. Rep. 351;)   *Hartman* v. *Weiland,* 36 Minn. 223, (30 N. W. Rep. 815;)   *Bloom* v. *Moy,* 43 Minn. 397, (45 N. W. Rep. 715.)   One expression in *Walsh* v. *Byrnes,* 39 Minn. 527, (40 N. W. Rep. 831,) may point to a different conclusion, but the entire opinion is to the effect that to enable a subsequent creditor to avoid a transfer as fraudulent it must appear that its purpose was, or that its effect will be, to defraud him. An intent to defraud existing creditors may, in connection with other circumstances, be evidence on the question of intent to defraud subsequent or prospective creditors.   *Bank* v. *Pray,* 44 Minn. 168, (46 N. W. Rep. 304.)   There is no little confusion in the authorities on the point, there being many *dicta* to the effect, and some decisions directly holding, that a subsequent creditor may avoid a conveyance fraudulent as to existing creditors, and other decisions—the majority of the more modern decisions—holding the contrary.   Few hold unqualifiedly that a conveyance is void as to subsequent creditors merely because made with intent to defraud creditors who were such at the time of its execution.   In most of the decisions of the former class referred to, the effect as to subsequent creditors is made to depend on the circumstances under which the conveyance with intent to defraud existing creditors was made. In this state, where the question of the fraudulent intent is one of fact, and not of law, the circumstances referred to in those cases would not make the conveyance void *per se,* but would be evidence of a fraudulent intent as to subsequent creditors.   The evidence might be of such a character—as where the fraudulent intent appears by the instrument making the conveyance—as to be conclusive, and compel a finding of its existence.   It seems reasonable that a creditor assailing a conveyance by his debtor should stand on its intent or effect as to himself, and that A. ought not to be permitted to avoid it merely because it was intended to or will prejudice B.   A conveyance may be made with intent to defraud existing, but without such intent as to subsequent, creditors, or it may be with intent to defraud only subsequent creditors, or it may be to

defraud both classes. The purpose of the rule of the common law and of the statute which reasserts that rule is to defeat the intended fraud, which it does by making the conveyance void as to the persons intended to be defrauded, and who will be defrauded unless it be avoided. The statute, (13 Eliz. ch. 5,) which all subsequent statutes follow in substance, if not in terms, avoided the conveyance "only as against those persons, their heirs," etc., "whose actions," etc., "are defrauded." There is no warrant in it for holding that one class of creditors may avoid a conveyance merely on the ground that it was intended to, and, if sustained, will, defraud another class.

Judgment affirmed.

MITCHELL and COLLINS, JJ., took no part in the decision.

(Opinion published 51 N. W. Rep. 475.)