## EMELINE S. WINN v. J. W. BARNETT et al.

1. FRAUDULENT ASSIGNMENT: BY WHOM AVOIDED.—As a general rule, a conveyance of his property, made by the debtor with the intent to hinder, delay, and defraud his creditors, can be avoided only by those whose debts existed at the time the assignment was made; subsequent creditors cannot set aside such a conveyance unless the property was in such a situation that the debtor gained credit upon the faith of it, or unless the fraudulent grantee held it in secret trust for the benefit of the grantor; and this rule was applied by this court to a case where the assignment was made by the husband to the wife.

2. FRAUDULENT ASSIGNMENT: CANNOT BE SET ASIDE BY ADMINISTRATOR.—An administrator cannot maintain a bill to annul a fraudulent assignment made by his intestate, although the estate has been declared insolvent.

3. SAME: WHERE INSOLVENT ESTATE MAY BE RENDERED LIABLE TO CREDITORS WITHOUT A JUDGMENT AT LAW.—A creditor of a deceased person whose estate has been declared insolvent, if he regularly establish his debt in the Probate Court, and

before the commissioner of insolvency, may maintain a bill to set aside a fraudulent conveyance made by the decedent, without having first obtained a judgment at law, and a return of *nulla bona* thereon.

APPEAL from the Vice-chancery Court at Yazoo city. Hon. Selden S. Wright, vice-chancellor.

The substance of the bill is set out in the opinion of the court.

*G. B. Wilkinson,* for appellant.

For appellant it is contended that the court below erred in overruling the demurrer to the bill, because an administrator cannot maintain a bill to set aside a deed made by his intestate in fraud of the rights of creditors. *Eubanks* v. *Dobbs,* 4 Pike, (Ark.) R. 173, cited in 4 U. S. Dig. 806; *Kipp* v. *Hanna,* 2 Bland. R. 26; Atherley on Marriage Settlements, 116, 117; Roberts on Fraudulent Conveyances; and it makes no difference that the administrator is himself a creditor; he is estopped by the fact that he is administrator. *Moody* v. *Fry,* 3 Humphrey, R. 567.

The deed is valid as to all persons except creditors, and they may assent and make it valid as to them. *Whitney* v. *Freeland & Murdock,* 4 Cushman, R. 486. This case is, in principle, precisely in point.

*Q. D. Gibbs,* for appellees.

The first question which arises in this case, is upon the demurrer to the bill which was overruled by the court below.

It was contended by counsel for defendant below, that an administrator could not (though the estate was declared insolvent) file a bill to impeach a fraudulent conveyance. It is very true, as a general principle, that an administrator is, by virtue of his office, subrogated to the rights of the intestate; and so far as they represent the distributees of an estate, they could not be heard to impeach a voluntary conveyance. But we insist, when an estate becomes hopelessly insolvent, and is so declared by the court in which such administration is pending, the administrators no longer represent distributees—all legal privity between them and the distributees cease. They are not acting as trustees for the distri-

Winn v. Barnett et al.

butees, but they are exclusively the trustees for creditors, and as such, it is their duty to take the proper steps to reduce into their possession any property of their intestate fraudulently held by another, and which equitably, should be applied to the satisfaction of his debts; and that more especially is this the case, from the fact that legislation has made it so, and has deprived the creditor of all remedy, except through the administrator. The Supreme Court of Tennessee, in the case of *Simpson* v. *Simpson*, 7 Humphreys, held, that though a creditor might file a bill against a fraudulent vendee and the administrator (that is, when fraud in the administrator was charged) yet an administrator might do it; and in that State there are no statutes disabling the creditor in his remedies.

We can see no difference as to their relation to creditors and a fraudulent vendee, between an assignee in bankruptcy and an administrator of an insolvent estate; yet it is settled in England that an assignee may impeach a voluntary conveyance, (Fonb. Eq. 205-209,) and there, neither in the Bankrupt Acts, nor any other act, is the creditor limited in his direct remedy. But the decisions of our high court, and the acts of our legislature, leave the creditor no remedy except through the administrator. We think the legislature very clearly indicate it as a duty to be performed by the administrator to administer upon assets fraudulently held as well as any other assets. The 79th section (Hutch. Code, 661,) makes it his duty to return " an inventory of personal property of any kind, or assets," &c. Our Statute of Frauds (Hutch. Code, 637,) makes such a transaction " clearly and utterly void;" and if so, the property is certainly assets, and it is their duty to return it as such to the Probate Court, and apply it to the partial payment of the claims of the defrauded creditors. We have said the creditors could not file this bill. Section 103 (Hutch. Code, 667,) declares that the creditor shall not institute suit after an estate is declared insolvent. The administrator would be, of course, an indispensable party if such a bill was filed; and if it was filed, and should state the insolvency of the estate, (which they would be bound to do, because a voluntary conveyance could not otherwise be impeached by any body,) it would surely be demurrable and the read-

ing of the statute alluded to would be sufficient to dispose of the point.

In addition to that, this court has settled the point that a general creditor cannot go into a court of equity to reach equitable assets, he must have a judgment at law, and exhaust his legal remedies first. The exhibits show that the creditors, for thousands over and above the assets, have no judgments. There is no way in which a creditor can be recognized as competent by a bill to impeach a fraudulent conveyance by an insolvent intestate, unless, perhaps, he could charge fraudulent neglect of duty upon the administrator, as he might, in other cases, when a trustee refused to discharge his office. What attitude does an administrator occupy whose intestate's estate has been declared insolvent? His whole office consists of a trusteeship for creditors, and for creditors alone. The Supreme Court of New York, say, (12 Wend. 543,) " They are not now the mere representatives of their testator or intestate. They are constituted trustees, and the property in their hands, is a fund to be disposed of in the best manner for the benefit of creditors." The court here spoke in reference to the effect of the act which abolished priority of judgments against administrators. Our act, depriving the creditor of the right to sue at all, makes this case stronger, and our act further provides for a *pro rata* distribution of the assets, and the law commits that duty to the Probate Court, and it is exclusively the province of that court, through its officer (the administrator,) to make this appropriation.

The Supreme Court of New York, say, (2 Hill, 186,) "Whatever difficulty there might be in allowing an administrator to set up the fraud, when considered as the mere representative of the intestate, *there can be none when he is regarded in the further capacity of a trustee for creditors, and is necessarily acting for their benefit.*"

Both these New York cases were actions at law; but this bill has the additional fact to sustain the jurisdiction of a court of equity, that it is filed *quia timet,* and seeking discovery. But if the failure to state in the bill that complainants are creditors, was a defect, it was cured by the amended bill proposed to be filed, the filing of which was resisted, and it is not an error of which defendant could complain. But the court did not err in overruling this

Winn *v.* Barnett et al.

demurrer, for another reason. The bill charges fraud specifically, and no answer accompanies the demurrer denying the fraud. If indebtedness to complainants was a material fact, upon which to base the jurisdiction, it could not avail defendant on final hearing, because the proofs in the cause establish the fact that they are creditors of the estate for a large amount.

2. The bill charges, and the proof shows, that at the time the assignment was made, Winn was greatly embarrassed, and that to defeat these debts, he made the fraudulent arrangement complained of. This is sufficient to avoid the deed to the wife. Fonbl. Eq. 205; 5 Conn. R. 427, 450; *Reade* v. *Livingston*, 3 Johns. Ch. R. 481; *Hind's Lessee* v. *Longworth*, 11 Wheat. 199; Roberts on Fr. Con. 17, 24; 12 S. & R. 448. If there was *one* creditor, at the time of the purchase, who is not yet satisfied, it is a fraud as to him, and fraudulent as to all subsequent creditors. 1 Peters, C. C. R. 460; 4 Yerger, 164; *Trimble* v. *Turner*, 13 S. & M. 348; *Henry* v. *Fullerton*, Ib. 631; 11 Paige, 589; 6 Hump. 215, and the cases already cited. See also *Bogard* v. *Gartley*, 4 S. & M. 302.

FISHER, J., delivered the opinion of the court.

The complainants, as administrators of the estate of R. M. Winn, deceased, filed this bill in the Vice-Chancery Court, at Yazoo City, to recover certain slaves in the possession of and claimed by the defendant, on the ground that her title was, and is fraudulent and void, as to the creditors of the intestate.

The allegations of the bill are as follows :—That J. R. Burrus, as administrator of one Cheatham, in the year 1849, sold the slaves in controversy under an order of the Probate Court of Yazoo county, when Joshua T. Russell became the purchaser, and executed his note with the intestate, Winn, as security; that at or about the time of the sale by Burrus, there was an understanding between Russell and Winn, that the former should purchase the slaves for the benefit of the defendant, then the wife and now the widow of Winn; that Burrus accordingly executed the bill of sale conveying the slaves to the defendant; that Winn was at the time of this transaction greatly embarrassed, and that the bill of sale to the defendant was merely colorable and void, as to Winn's

VOL. II.—42

creditors, under the Statute of Frauds.    The bill further alleges
that Winn died, in 1853; that the complainants were appointed
by the Probate Court of Yazoo county, his administrators; and
that the estate has been regularly declared insolvent, and will
still be so, even if the slaves should be treated as part of the estate.

To this bill, containing these allegations, the defendant demurred,
and the court overruled the demurrer.    The defendant thereupon
answered the bill, when both parties proceeding to take testimony,
the cause was finally heard upon the merits, and a decree rendered
for the complainants, from which this appeal has been prosecuted.

It is not very material, so far as the result is concerned, whether
we confine our examination to the questions arising upon the demur-
rer or extend the examination to the case, as it appears from the tes-
timony, as the same defect will be found to exist in either aspect of
the case.    Let it be assumed, for the present, that the complain-
ants, as administrators, could maintain a bill to set aside a dispo-
sition of property by their intestate, fraudulent as to his creditors,
the question then arises whether the bill contains enough to show that
the title of the defendant to the slaves in question, is void as to her
husband's creditors.    The principle which lies at the foundation of
every judicial proceeding, at the instance of creditors to set aside
a fraudulent disposition of property by their debtor, is either that
the debts were contracted, or the credit gained upon the faith
of such property.    Hence, if it do not appear that the debts existed
at the time the disposition of the property was made, the transac-
tion cannot, as a general rule, be said to be fraudulent as to credi-
tors, for the obvious reason that credit was not given upon the
faith of the property.    It nowhere appears by the bill, that the
debts now existing against Winn's estate existed against him at
the time the defendant's title accrued.    It is, therefore, difficult to
see upon what principle the title must be held void under the
Statute of Frauds.    So far from this statute being intended to
enlarge or extend the rule which previously existed, its object was
to restrict the rule, and make it apply only to creditors who were
hindered, delayed, and defrauded by the transaction alleged to be
fraudulent.    The general rule was, and is, that fraud vitiates every
transaction into which it enters.    The statute being enacted with

Winn v. Barnett et al.

reference to this rule, declares that the conveyance or disposition of property by a debtor, with the design of hindering, delaying, or defrauding his creditors, shall only be treated as void (voidable is the correct word) as to those creditors who shall be thus hindered, delayed, or defrauded; leaving the conveyance, in all other respects, binding between the parties. Hutch. Code. It must follow, therefore, that persons who were not creditors at the time the defendant's title accrued to the slaves, were not and could not be defrauded, hindered, or delayed, in consequence of the transaction which led to the consummation of her title, in the collection of their debts. It is true, that it has been held in some cases, that where a conveyance by a debtor was fraudulent in its inception as to his creditors at the time, it will be so treated as to subsequent creditors. But these cases must rest upon one of two principles, the property was either so situated that it enabled the debtor to obtain credit upon the faith of it, or the fraudulent vendee was regarded as a trustee under the secret arrangement between the parties, and in virtue of such secret understanding, bound at least so far as his word or such contract could bind him, to account to the fraudulent vendor; and hence the creditor was allowed to be substituted to what was treated as the substantial interest of his debtor, and subject the property to the payment of his debt.

In the present case, however, it is neither shown that the debts were contracted upon the faith of the property, nor that the defendant was in any manner a trustee for, or accountable to, her husband for the slaves. Treating the complainants, therefore, as merely representing creditors, they have shown no case entitling them to relief. Creditors could not be supposed to have given credit upon the faith of what their debtor did not own, or what it was not even in his power to pledge for the payment of his debts.

But it is now not an open question in this court, that an administrator who stands in privity as to the acts of his intestate, cannot maintain a bill to annul that which was binding upon the deceased in his lifetime, and there is in addition, still another reason why such a bill could not be maintained by an administrator. The transaction was only voidable as to creditors who were in some manner injured by it, and as to the parties and all

others the transaction was valid and binding. An administrator could, under any view, only represent such creditors as had a right to assail the deed; the recovery could, therefore, only be had for the benefit of such creditors. The property, in that event, would not be recovered for the general purposes of the administration, but only to satisfy specified debts. The creditors having this right elect to waive it, and hence the litigation would only be useless. Upon the whole case, we are satisfied that the safe rule is as it has been settled—to leave the remedy in the hands of such creditors as have a right to question the validity of the alleged fraudulent transfer of the property.

But it is said that the creditor thus proceeding must first have recovered his judgment and exhausted his remedy at law. This may be true as a general rule. But when an estate has been declared insolvent, the debt must be established by the Probate Court, if not already reduced to a judgment, and this action of the Probate Court, so far as the mere establishment of the debt is concerned, is as much a judgment as if rendered by the Circuit Court, and the other proceedings of the court (Probate Court) will either show how much has been, or can, at most, be paid on the debt. Such proceedings as to the balance of the claim, would be treated as a "*nulla bona*" as to a balance due on an execution at law. The same fact is virtually established, to wit, that no other means or property are in the hands of the administrator with which to satisfy such balance.

Decree reversed, and bill dismissed.