Boatmen's Savings Bank, Respondent, *v.* Overall, Appellant.

### February 10, 1885.

1. Chattels — Possession Evidence of Title. — That a man deposits money in a bank in his own name and draws it out on his personal check is *prima facie* evidence that the money is his.

2. Fraudulent Conveyances. — An insolvent person may make a voluntary transfer of property to his wife which will be good as against subsequent creditors, unless it is made with the intent to hinder, delay, or defraud them.

3. Instructions. — It is error to instruct the jury upon a hypothesis not warranted by the evidence.

4. Evidence. — A jury can not find the existence of a fact merely because a discredited witness has testified to the non-existence thereof.

Appeal from the St. Louis Circuit Court, Lubke, J.
*Reversed and remanded.*

Hough, Overall & Judson, for the appellant.

W. B. Thompson, for the respondent.

Rombauer, J., delivered the opinion of the court.

This cause presents some close questions, and it is not without hesitation that we have arrived at the conclusions announced in this opinion.

The appellants are garnishees on attachment proceedings brought against one Wm. V. Kay, as indorser of two notes of the Missouri Cotton Seed Oil Company. The notes which were made by Kay as president of the company bore date November 13, 1880, and were payable sixty days after date. The indebtedness evidenced by them originated in November, 1879, and January, 1880.

The garnishees, who are attorneys at law, answering plaintiff's interrogatories, denied any indebtedness on their part to Wm. V. Kay, but admitted that at the date of the service of the garnishment, they did hold a check for $10,000, since

cashed, as proceeds of certain notes secured by deed of trust on the property of the Missouri Cotton Seed Oil Company, which notes they had received as attorneys from the agents of one Mary A. Tilden and one Jane G. Kay. They averred that said notes had been the sole, separate, and individual property of said parties in the proportion of $3,000 for Mrs. Tilden and $7,000 for Mrs. Kay, and that the debtor and defendant in the attachment suit, Wm. V. Kay, had no interest therein.

This answer was denied by plaintiff, the denial asserting that the money consideration of these notes secured by trust deed was furnished by defendant Kay. The denial further stated that Kay, being insolvent and intending to cheat and defraud his creditors, had pretended to transfer these notes to the agents of Jane G. Kay, his wife, and Mary E. Tilden, a relative.

Plaintiff's denial was contradicted by reply. The reply stating, among other things, that the garnishees had since the service of the writ upon them, parted with some of the funds, but had retained sufficient to cover plaintiff's claim.

The cause was tried by a jury upon these pleadings. Plaintiff gave evidence, showing that in the fall of 1880 Wm. V. Kay, the debtor, kept an account in his own name with the Bank of Commerce in the city of St. Louis; that on that account he deposited November 5, $5,000; November 8, $5,000; December 7, $375; December 15, $500, and December 16, $500, all in the year 1880. That $10,000 of this money, or thereabout, was loaned to the Missouri Cotton Seed Oil Company, and checked out by Wm. V. Kay's individual checks. That the company had on the 28th day of October, 1880, executed a deed of trust on its property to secure four notes, all bearing date October 27, 1880, and all payable six months after date, two of said notes being for $2,000 each and two for $3,000 each, which notes were payable to Wm. V. Kay, president, and were delivered to

him, as security for the advances made, as above stated. That the deed of trust was not recorded until January 15, 1881. That the notes so made were the notes which subsequently came to the hands of the garnishees. Plaintiff also gave some testimony tending to show that Wm. V. Kay was in the latter part of 1880 in embarrassed circumstances, and probably insolvent.

The judgment, recovered by the plaintiff against Kay in the attachment suit, was also put in evidence. This being all the testimony for plaintiff, the garnishees demurred by instruction, but their instruction was refused.

The garnishees thereupon called Wm. V. Kay, the debtor, who testified in substance, that $10,000 of the money deposited by him with the Bank of Commerce, in November, 1880, was the money of his wife, Jane G. Kay; that he loaned $7,000 of this money, as agent of his wife to the Missouri Cotton Seed Oil Company, and took the notes of said company, and sent and delivered three of them, amounting to $7,000 to his wife. That the $10,000 above mentioned were part proceeds of sale of some real estate which his wife had owned in Lake Forest, Illinois, and which she had sold in November, 1880. That Mrs. Kay had instructed him to lend the money to the Missouri Cotton Seed Oil Company. That he had loaned $3,000 of the money of Mrs. Tilden to the company prior to this time, and gave to Mrs. Tilden one of the $3,000 notes secured by trust deed as security.

On cross-examination witness stated that the property at Lake Forest, Illinois, sold by his wife, had at one time stood in his own name. That in March or April, 1878, he transferred it to his son, Wm. G. Kay, who shortly thereafter transferred it to his, defendant's, wife. That the property stood in his wife's name for two years before she sold it in the fall of 1880. That he was solvent at the date of the transfer of the property to his son and wife, and that his embarrassments came from the failure of the oil com-

pany in the early part of 1881. The manner of the witness, testifying, as far as preserved in the record, was such, as might have affected his credit with the jury, under the particular circumstances surrounding these transactions.

One of the garnishees then testifed that the notes were placed in the hands of his firm for collection by Wm. G. Kay, the son of the attachment debtor, who stated at the time that one note for $3,000 belonged to Mrs. Tilden and the others to his mother Jane G. Kay. The witness had no personal conference with these clients, and could not say whether he ever had received any written instructions from either of them.

This was in substance all the testimony bearing upon the instructions of the court.

At the close of the entire testimony, the garnishees again demurred by instruction, and the court again refused that instruction, but gave all other instructions asked by them.

There was no error in the action of the court in overruling the demurrers to the evidence.

It is true that under the pleadings the burden of proof in the first instance was upon the plaintiff. *Holton* v. *Railroad Co.,* 50 Mo. 151. But when plaintiff had shown, without contradiction, that the consideration of the notes, out of which the fund held by the garnishees arose, consisted of certain money held and controlled by the attachment debtor, that these moneys had been deposited by him in his own name in bank and were thence drawn on his individual checks, plaintiff did make a *prima facie* case, rebutting the case made by the garnishees' answer. Possession of personal property is presumptive evidence of title. 1 Greenl. Ev. sect 34 ; *Simmons* v. *Austin,* 36 Mo. 307.

The plaintiff was entitled at the close of its case to have the question of title submitted to the jury. It was sufficient to shift the burden of proof. And plaintiff was entitled at the close of the entire testimony to have the question submitted to the jury, whether its *prima facie* case was

avoided by the testimony of the defendant in the attachment, unless we first find that that testimony was such that the jury was bound to give credence to it, as a matter of law.

We have said in a recent case that "where the testimony offered in support of the allegations of the party who sustains the burden of proof is, if believed, sufficient to make out his case, and is clear, consistent with itself, delivered by an unimpeached witness, and no circumstance is developed tending to cast suspicion upon it, it must be believed in the absence of controverting testimony." *Lionberger,* v. *Pohlman, ante,* p. 392. But the testimony offered by the garnishees, being the testimony of the attachment debtor,. fails to meet several of these requirements.

There was, therefore, no error in refusing garnishees" demurrers to the evidence at any stage of the trial, and if the court had stopped there, and the jury would have found for plaintiff as they did, we would not have disturbed the verdict, as the only objection that could have been urged against it would have been that it was against the weight of evidence.

But the court went further. At the request of plaintiff it instructed the jury : —

"3. If the jury believe from the evidence in this case that the money loaned to the Missouri Cotton Seed Oil Company was the proceeds of the sale of real estate in Illinois, which was conveyed to a son of Wm. V. Kay, and which at the time of such conveyance belonged to William V. Kay, then said proceeds of sale coming to the possession of Kay, if he was then insolvent, could not be lawfully assigned to his wife while he was insolvent : and if the jury find that the money in the hands of the garnishees was the proceeds of the loan of said funds, then the jury will find for plaintiff.

"4. The jury are instructed that if they find from the evidence that the money deposited in the Bank of Com-

merce was reduced to the possession of Wm. V. Kay, as his money, with the consent of his wife in the state of Illinois, and brought into this state and loaned to the Missouri Cotton Seed Oil Company as his money, and again transferred to his wife after he became insolvent, and to hinder, delay, or defraud his creditors, then the jury will find for the plaintiff, notwithstanding they may believe from the evidence that said money was the proceeds of real estate sold belonging to the defendant William V. Kay's wife."

Neither of these instructions can be justified under the facts of the case.

The law in regard to voluntary conveyances is very simple. A conveyance made without consideration is void as to existing creditors, regardless of intent; as to subsequent creditors, it is void only when made with intent to hinder, delay, or defraud them. *Payne* v. *Stanton*, 59 Mo. 159; *Hurley* v. *Taylor*, 78 Mo. 238; *Fisher* v. *Lewis*, 69 Mo. 629.

The conveyance made by Kay, the debtor, to his son in March or April, 1878, and more than twenty months before the inception of plaintiff's claim, could not be questioned by plaintiff. The only transfer of property that could be challenged as fraudulent was the assignment of the notes by Kay to his wife, at the time when he was a debtor of plaintiff and probably insolvent. His testimony was to the effect that the money was that of his wife, the proceeds of the sale of some real estate belonging to her, and given to him for the purpose of loaning it to the corporation, whose notes, given for this money, he returned to his wife. If this be true he never had any title to these notes which he could assign. The fourth instruction asked by the plaintiff, and given by the court, tells the jury that if they find that the money in the Bank of Commerce "was reduced to the possession of Wm. V. Kay as his money, with the consent of his wife," etc. We find no evidence in the record to

support this instruction, unless we can assume as a legal proposition that a jury may, when a fact is asserted by a discredited witness, not only disbelieve him, but consider his assertion of one fact as affirmative testimony of another fact diametrically the reverse. This we must decline to do.

The third instruction asked by plaintiff and given by the court is obscure in meaning, and tended to mislead the jury. If Wm. V. Kay transferred property to his son, prior to the inception of plaintiff's claim, and without any presumable intent of hindering the plaintiff, the property became that of his son, and we can not see how the proceeds of that property, coming afterwards to the hands of Wm. V. Kay, could not lawfully be assigned by him, except as against his son, to anybody. If he gave the property of his son away, that son is the proper party to complain, and not his creditors. If that instruction was framed to convey the idea that the conveyance to young Kay was a mere cover, the real title to the property remaining all along in Kay, the debtor, and that when the property was sold the proceeds thereof became the property of the debtor, then, its language was very inaptly chosen.

While we are loth to disturb the verdict of a jury on a question of fraud, being sensible that the offense is one much easier accomplished than prove, we deem it essential, that even in such cases, that regard be paid to the substantial elements of form, which long experience has shown to be essential to the proper administration of justice.

The judgment of the circuit court is reversed, and the cause remanded to be proceeded with in conformity with this opinion. All the judges concur.