# D. B. LOY, Appellant, v. J. B. RORICK et al., Defendants; W. F. RORICK, Interpleader, Respondent.

### St. Louis Court of Appeals, January 20, 1903.

1. **Husband and Wife: GIFT: FRAUD: EVIDENCE.** Defendant, while a conductor on a railroad for fifteen or sixteen years, gave all his earnings above his personal expenses to his wife, and she saved a good part of it and invested it. Afterwards he subscribed for stock in a mill company, taking some shares in his own name, and twenty-five shares in his wife's name, but it was all paid for with her money, the proceeds of such savings. Thereafter he contracted debts, and lost the stock in his name. Plaintiff sued defendant on a debt due from him, and attached the stock in the name of the wife as the property of the husband, alleging that it belonged to defendant, and was placed in her name to defraud his creditors. *Held,* that as the money with which it was bought was given the wife when the husband was not in debt, nor in an occupation in which he was likely to contract debts, the stock was the property of the wife, and not subject to the claim against the husband.

2. **Burden of Proof: FRAUD: PRACTICE, TRIAL: RIGHT TO OPEN AND CLOSE: ERROR.** Plaintiff requested leave to open and close on the ground that he had the burden of proving fraud, but the request was denied. *Held,* error; but as the evidence showed that there was no foundation for his claim of fraud, the error was without prejudice.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper,* Judge.

AFFIRMED.

### STATEMENT.

Defendants J. B. Rorick and S. C. Ewing were engaged, as partners, in the mining business at Aurora, Missouri, in the years 1899 and 1900. As partners they borrowed money of the plaintiff aggregating $4,192.63, evidenced by their two promissory notes. They failed in the mining enterprise and their mining prop-

erty was sold under a mortgage and proceedings in an attachment suit, and passed from their control.   On November 27, 1900, plaintiff brought suit on his two promissory notes in the Lawrence Circuit Court and in aid thereof sued out a writ of attachment by virtue of which twenty-five shares of the par value of $2,500 of the capital stock of the Aurora Milling Company (a corporation) was attached as the property of the defendant, J. B. Rorick.   On February 11, 1901, W. F. Rorick, the wife of J. B. Rorick, filed her interplea in the suit claiming that the twenty-five shares of stock attached were her sole and separate property.   To the interplea the plaintiff filed the following answer:

"Plaintiff, for answer to the facts set up by the interpleader in this suit, admits that she was in possession of the stock attached at the date of the levy by the plaintiff, but denies each and every other allegation in said interplea contained, except that plaintiff has caused the shares of stock mentioned in said interplea to be attached as the property of the defendant, the husband of the interpleader.

"Further answering, as to such interplea, plaintiff says it is not true, as alleged, that said stock in the Aurora Milling Company is, or ever was, the property of the interpleader, but the plaintiff charges that all and every of said allegations are false.   That in truth and in fact the said shares of stock attached by the plaintiff are the personal property of the defendant; that he bought the same with his own personal and individual means and had the same placed in the name of his wife, the interpleader, for the fraudulent purpose and with the fraudulent intent of defrauding, hindering or delaying his creditors, and of defrauding, hindering and delaying the plaintiff.   That the interpleader accepted and held said certificate for the use and benefit of her said husband and to further assist him to hinder, delay and defraud his said creditors and not because she is or ever was the owner of said stock.

"That said shares of stock are subject to the legal debts and obligations of the defendant; the plaintiff's debt is a legal, subsisting debt and said shares of stock are legally liable to the levy of the plaintiff.

"Wherefore plaintiff asks that said shares of stock in said Aurora Milling Company be adjudged the property of the defendant and subject to his debt."

A reply was filed to the interplea and the issues were submitted to a jury, who, after hearing the evidence and receiving the instructions of the court, returned a verdict for the interpleader.

Plaintiff filed timely but ineffectual motions for new trial and in arrest of judgment. Judgment was entered upon the verdict from which the plaintiff appealed.

The articles of association of the Aurora Milling Company show that J. B. Rorick subscribed for ninety-nine shares of stock and W. F. Rorick for one share, but when the time came to pay the subscription for the stock J. B. Rorick directed that twenty-six shares be issued to his wife and thirty-five shares be issued to himself and that his subscription be reduced to sixty-one shares for both himself and wife. The certificates of stock were issued as directed by him, to-wit: twenty-six shares to W. F. Rorick and thirty-five shares to J. B. Rorick.

J. B. Rorick and S. C. Ewing owed the Bank of Aurora $1,200 for money borrowed which they used in the mining business. They wished to increase this loan to $3,100. The bank agreed to increase the loan on condition that Rorick would put up thirty-one shares of the Aurora Milling Company stock as collateral security to secure the loan. The loan was made and Rorick pledged the thirty-five certificates of stock issued to himself and one of the twenty-six which had been issued to his wife. These certificates passed into the hands of third parties in the liquidation of the bank debt.

About June 1, 1900, a mortgage, which had been given by Rorick and wife on a house and lot in Monett, owned by Mrs. Rorick, to secure the sum of $1,500, became due. To meet this indebtedness Mrs. Rorick made application to the plaintiff to take up the mortgage and proposed to pledge her twenty-five shares of Aurora Milling Company stock as collateral to secure the loan. Plaintiff suggested to Rorick that he have all the shares consolidated in one certificate to be issued to him. Mrs. Rorick assented to this arrangement and on June 2nd, Rorick produced and surrendered the twenty-five certificates of the milling company stock and took one certificate in his own name for twenty-five shares. He took this certificate to plaintiff for the purpose of pledging it as security for a loan to take up the mortgage. It was then agreed that Loy would take an assignment of the mortgage and carry it for thirty days and the stock was not pledged. Loy took an assignment of the mortgage and carried it for a time. On June 28, 1900, Rorick made the following assignment of the certificate:

"For value received, I hereby sell, transfer and assign to W. F. Rorick shares of stock within mentioned and hereby authorize the secretary of the Aurora Milling Company to make the necessary transfer on the books of the corporation.

"Witness my hand and seal this 28th day of June, 1900. Witnessed by J. A. Gregory.

"J. B. RORICK."

The transfer was duly entered on the stock books of the milling company. These books show that the twenty-five shares of stock attached stood in the name of Mrs. Rorick from November 9, 1897, the date of their original issue, until June 2, 1900, and that they stood in the name of J. B. Rorick from June 2, 1900, until June 28, 1900, and from the latter date they had stood in the name of Mrs. W. F. Rorick.

J. B. Rorick was secretary of the milling company

and was in its employ for nearly two years from and after its organization in 1897 and until the time he formed a partnership with Ewing and went into the mining business.

The evidence shows that at the time Rorick went into the milling company the only visible property he owned was a farm in the State of Kansas which he afterwards sold for $500; that he and his wife were married in 1879; that for fifteen or sixteen years he was a conductor on the St. Louis & San Francisco railroad and earned from $125 to $150 a month; that all the money he earned, over and above his personal expenses during all these years, he gave to his wife and she saved a good part of it, loaned it at interest, invested it in real estate and in building and loan stock; that in 1897 when the Aurora Milling Company was organized she owned a farm in Barry county, one in Lawrence county, some real estate (house and lot) in Monett, and real estate in Pierce City, Missouri, all in her own name and that she owned some shares in a building and loan association in the city of Springfield, Missouri; that she had acquired all of this property by money that had been given to her by her husband and from interest thereon; that the only property she inherited, or that came to her from any source other than from her husband, was a vacant town lot, which had been given to her by her grandfather, but the title to which was in the name of her husband; that in the formation of the milling company and in all his transactions therewith, Rorick acted as the agent of his wife. This agency, however, was not disclosed to any one connected with the milling company and they had no knowledge of the fact that Rorick owned no property in his own name.

The money to pay for the sixty-one shares of milling stock issued to Rorick and his wife was raised in the following manner: cash $100, $1,100 on matured shares in a building and loan association held by Mrs. Rorick in her own name, $1,900 from the sale of her

farm in Lawrence county, $1,500 raised by mortgages on her farm in Barry county, and $1,500 raised by mortgage on her house and lot in the city of Monett, all of which property she acquired by money furnished her by her husband and from interest on loans of such money, and profits and rents from some of the real estate; that she made the purchases and investments on her own account and in most instances without consulting her husband and without his knowledge.

There is evidence that Rorick opened an account with the Commercial Bank of Aurora on November 7, 1894. This account, however, never exceeded $300 to his credit and was closed August 4, 1895. There is no evidence that Rorick had any other bank account anywhere prior to the date of his taking stock in the milling company and no evidence that he had any money at that time. In the formation of the milling corporation, and in the issuance of the stock subscribed, and in the management of the corporation after it became a running concern, Mrs. Rorick entrusted her whole interest to her husband and he received the dividends on her stock as declared from time to time and drew money from the corporation in his own name and it appears from the evidence that the other stockholders supposed he was the sole owner of the stock and testified that shares were issued to Rorick's wife at his request with a view of making her a director or officer of the corporation if found advisable.

*Wm. B. Skinner* and *Edw. J. White* for appellant.

(1) "A gift from a husband to his wife, to be sustained, even as against subsequent creditors, must be reasonable, i. e., it must bear a just and fair proportion to the actual amount of property and to his condition and prospects in life. Bisp. Pr. Eq. (4 Ed.), sec. 247, p. 311. (2) "A man can not denude himself of all or a greater part of his property, for the purpose of making gifts to his wife, for, by putting his property in his

wife's name, he might, practically, secure the means of support for himself and, at the same time, obtain, for his property, a complete immunity from his liabilities." Bisp. Pr. Eq. (4 Ed.), sec. 247, p. 312. (3) "If a husband should grant all his estate or property to his wife, the deed would be held inoperative in equity, as it would be at law, for it could, in no just sense, be deemed a reasonable provision for her (which is all that courts of equity would hold the wife entitled to)." Story's Eq. (11 Ed.), sec. 1374. And this is the rule adopted by the courts of this State. (4) In Snyder v. Free, 114 Mo. 360, it is said: "A voluntary conveyance by one, of all her property, thereby rendering herself insolvent, intending afterwards to contract debts, which she does contract, is fraudulent and void, as to such subsequent creditors, although there was no existing indebtedness of the grantor, at the time of making the conveyance." Hoffman v. Nolte, 127 Mo. 120, p. 135; Lander v. Ziehr, 150 Mo. 403. (5) A party is entitled to open and close, upon whom rests the burden of proof, and that it is reversible error to deprive him of this right to open and close the case, has been squarely held by this court. Grant Quarry Co. v. Construction Co., 72 Mo. App. 531; Porter v. Jones, 52 Mo. 399.

*Henry Brumback* and *H. H. Bloss* for respondent.

(1) The fact that these moneys might have been handed over to her husband or have been placed in bank in his name, or that he did the handling of them in investing them in the stock in dispute, did not give him title to the stock under the statute, as against his wife, nor as between himself and the plaintiff, to whom he contracted indebtedness two years later in the prosecution of a business in which he first engaged at such subsequent date. R. S. 1899, sec. 4340; Alkire Grocery Co. v. Ballenger, 137 Mo. 369; Jones v. Elkins, 143 Mo. 647;

Seay v. Hesse, 123 Mo. 450; Gruner v. Scholz, 154 Mo. 415; Stone v. Bank, 81 Mo. App. 14; Stagel v. Stagel, 81 Mo. App. 620. (2) There was no error in the court giving the interpleader the opening and closing of the case, under the issues joined. She had something to prove to maintain her position, and on her was laid the burden of proof in the first instance. Porter v. Jones, 52 Mo. 403; Railroad v. Donovan, 149 Mo. 102; James v. Mut. R. F. L. Association, 148 Mo. 16; Elder v. Oliver, 30 Mo. App. 578, and cases cited. (3) Even if the plaintiff were technically entitled to open and close, this is a matter within the discretion of the trial court and can not be made a ground of complaint unless it clearly appear that plaintiff was injured by the refusal. Lucas v. Sullivan, 33 Mo. 391; Leise v. Meyer, 143 Mo. 560; Meredith v. Wilkinson, 31 Mo. App. 11; Railroad v. North, 31 Mo. App. 350.

BLAND, P. J.—1. On the trial, before the taking of testimony was commenced, the plaintiff asked leave of the court to open and close the case, claiming that under the pleadings the burden of proof was on him. This request was denied and this denial is assigned as error. On the trial the interpleader assumed the burden of showing that she was bona fide the sole owner of the shares of stock attached. The interplea alleges ownership of the attached shares of stock in the interpleader. By a fair construction of the answer thereto legal ownership in the interpleader is admitted. To avoid the legal force of this admission the answer alleges that the shares of stock were in truth and in fact the property of J. B. Rorick and that he had them issued in the name of his wife for the fraudulent purpose of hindering and delaying his creditors. In this state of the pleadings the onus was on the plaintiff and he should have been permitted to open and close the case. But from the view we take of the evidence in the case this error did not prejudice the plaintiff.

2. At the close of all the evidence plaintiff moved the court to instruct the jury to return a verdict for him. This was refused and the cause was submitted to the jury under instructions given for both plaintiff and the interpleader which we deem it unnecessary to set out in this opinion for the reason that in our opinion, under all the evidence, the interpleader, if she had asked it, was entitled to a direction to the jury to find the issues for her.

In Payne v. Stanton, 59 Mo. 159, WAGNER, J., said: "The doctrine is well settled that a voluntary conveyance by a person in debt, is not, as to subsequent creditors, fraudulent *per se*. To make it fraudulent, as to subsequent creditors, there must be proof of actual or intentional fraud." The Payne case has been again and again approved by our appellate courts. See Frank v. Caruthers, 108 Mo. 568; Snyder v. Free, 114 Mo. 360; Landers v. Ziehr, 150 Mo. l. c. 413; Krueger v. Vorhauser, 164 Mo. l. c. 163-4-5; Grocery Co. v. Smith, 74 Mo. App. (K. C.) 419; Boatmen's Savings Bank v. Overall, 16 Mo. App. 510.

In Boatmen's Savings Bank v. Overall, supra, it was held that an insolvent person may make a voluntary conveyance of his property to his wife which will be good as against subsequent creditors, unless it was made with intent to hinder, delay or defraud them. The opinion of the Court of Appeals in this case was approved and adopted by the Supreme Court (90 Mo. 410). Notable cases in support of this doctrine from other jurisdictions are, Reade v. Livingston, 3 John. Ch. 481; Wallace v. Penfield, 106 U. S. 260; Schreyer v. Scott, 134 U. S. 405.

If an insolvent person may make a voluntary conveyance of his property to his wife which would be good as against subsequent creditors, unless it is shown that the conveyance was made with intent to hinder, delay or defraud them, much less is such a conveyance fraud-

ulent when made by a person who was not insolvent and not indebted and who was not engaged in a business in which he would probably contract debts and who had not in mind the purpose to engage in any business in the future in which he might contract debts, as was the condition of Rorick when he made the gifts to his wife. During the period in which Rorick gave money to his wife he was engaged in an occupation in which he would not likely contract debts and in which he did not, as a matter of fact, contract any. His occupation was hazardous to life and limb. He was under a legal obligation to support his wife and a moral one to make some provision against the happening of accident to himself which it was reasonable to anticipate might happen on account of the occupation he was engaged in. There is not a scrap of evidence that during any part of this period he had in mind to engage in the mining or milling or any other business; to hold, in such circumstances, that the gifts made by him to his wife of a part of his monthly earnings would be fraudulent as to subsequent creditors, would be to deny to a man, free from and with no intention of creating debts, the right to make a reasonable provision out of his means for his wife and family for fear that sometime in the future he might engage in a losing business and create debts that he would be unable to pay. There is not a ray of testimony to be found in the record to indicate that Rorick intended to hinder, delay or defraud his subsequent creditors when he was making gifts of money to his wife and, hence, no evidence tending to prove the allegations of the answer.

3. In respect to the transactions of June 2, and 28, 1900, when the twenty-five shares of stock that had been issued to Mrs. Rorick were cancelled and one certificate issued in their stead to J. B. Rorick and which he subsequently, on June 28th, assigned to Mrs. Rorick, the evidence shows that this change was made on the suggestion of the plaintiff; that the purpose was to de-

posit the certificate with plaintiff as collateral security for a loan of money to be used in paying off a mortgage on Mrs. Rorick's real estate in Monett. Loy had full knowledge that the original certificates were issued to Mrs. Rorick and the change to the name of Rorick was on his suggestion. He is, therefore, charged with actual knowledge of the fact that these certificates were the property of Mrs. Rorick and he is in no position to set up the claim that he gave credit to Rorick on the faith that he was the owner of them, even if there was evidence in the record that he relied upon these certificates when he gave credit to Rorick and Ewing. There is, however, no such evidence. The debt sued for was contracted prior to the transactions of June 2 and 28, 1900, and they have no bearing on the issues in the case other than to show that from June 2 to June 28, Rorick held the certificates of stock in his own name but as trustee of his wife and that Loy is charged with knowledge of this trust relation.

The judgment is for the right party and is affirmed. *Reyburn* and *Goode, JJ.*, concur, the latter in the result, as he thinks the instructions to the jury were correct.