## VAN ARSDALE v. FINDLEY (FINDLEY *et al.,*
## *Interveners.*)

No. 2510. Opinion Filed February 18, 1913.

Rehearing Denied May 13, 1913.

(132 Pac. 135.)

**FRAUDULENT CONVEYANCES—Validity of Transfer—Subsequent Creditors.** A voluntary conveyance is good as against a creditor to whom the grantor became indebted after the conveyance was made, where the conveyance was not made with the fraudulent intent to incur the debt, and where the creditor did not extend credit on the faith of the grantor's ownership of the particular property conveyed.

(Syllabus by Rosser, C.)

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Action by W. O. Van Arsdale against S. S. Findley, and M. E. Findley and others intervene. From a judgment for interveners, plaintiff appeals. Affirmed.

*E. L. Foulke, C. A. Matson,* and *Tibbetts & Green,* for plaintiff in error.
*Horace Speed,* for defendants in error.

Opinion by ROSSER, C. This was an action by W. O. Van Arsdale against S. S. Findley on a judgment of the district court of Sedgwick county, Kan. M. E. Findley, S. F. Hawley, and M. J. Wallace intervened in the case, claiming the property which had been attached. There was a judgment for the plaintiff against the defendant, S. S. Findley, and a judgment for the interveners for the attached property. From this judgment in favor of the interveners, the plaintiff has appealed.

It appears from the evidence that S. S. Findley, prior to the time of the transaction out of which suit arose, had been a banker and a man of considerable means and good credit. M.

E. Findley is the wife of S. S. Findley; Mrs. S. F. Hawley is his wife's mother; Mrs. M. J. Wallace is his sister. Mrs. Hawley and Mrs. Wallace had a little money which they had intrusted to him, and in handling their money he had become indebted to them for a portion of it, and his wife, M. E. Findley, became surety for his indebtedness to them. On the 11th of March, 1905, S. F. Findley conveyed the property which is attached in this action to F. W. Hawley, who is M. E. Findley's brother. This conveyance was made to Hawley because S. S. Findley thought it was the law that a man could not convey land directly to his wife, but that it was necessary that it pass through the hands of a third person, and was made to enable Hawley to convey to Mrs. Findley. On the 13th of March, 1905, Hawley and wife reconveyed the property to Mrs. Findley. All these conveyances were recorded in a few days after they were made. In January following this conveyance Mrs. Findley, joined by the defendant, S. S. Findley, her husband, mortgaged the property to Mrs. S. F. Hawley to secure the debts that S. S. Findley owed Mrs. Hawley, upon which Mrs. M. E. Findley was security. On the 14th of November, 1906, Mrs. M. E. Findley, joined by her husband, S. S. Findley, deeded the property in controversy to Mrs. S. F. Hawley and Mrs. M. J. Wallace. On the 5th of December, 1906, Mrs. Hawley and Mrs. Wallace executed a declaration of trust, in which they declared they held the deed to the land for the purpose of selling it and paying certain mortgage debts to one Baxter and the Commonwealth Trust Company, and the debts which S. S. Findley owed them, and by it they agreed to hold the balance of the proceeds, after paying said debts and certain expenses, for M. E. Findley. S. S. Findley was appointed their agent to act for them in carrying out the trust.

About the time that S. S. Findley executed the deed to Hawley to the land, he became interested in some corporations, among others one known as the American Manufacturing Company. On the 8th of May, 1905 (that is, about two months after the deed from Findley to Hawley and from Hawley to

Findley's wife), the American Manufacturing Company borrowed $1,000 from the plaintiff, W. O. Van Arsdale, and executed a note therefor which was indorsed by Rudolph Hatfield and S. S. Findley. On the 8th of June, 1905, the American Manufacturing Company borrowed an additional sum of $1,500, and the note for this amount was also signed by Hatfield and Findley. Some stock of the American Manufacturing Company was also hypothecated to secure the payment of these notes.

A large number of errors are assigned. Plaintiff contends that the evidence shows that the conveyance to Mrs. Findley was made for the purpose of defrauding the creditors of S. S. Findley. He also relies on numerous alleged errors of the court in the admission of testimony and in the instructions. But there is one point decisive of the case. The conveyance from S. S. Findley to his wife had been made and recorded nearly 60 days at the time he indorsed the note of the American Manufacturing Company for $1,000 to Van Arsdale, and nearly 90 days at the time he indorsed the note of that company for $1,500. Van Arsdale does not claim that he relied upon Findley's ownership of the specific property attached in accepting his indorsement on the notes. There is no proof that Findley made any statement as to the ownership, and the deeds from S. S. Findley to Hawley and from Hawley to Mrs. Findley were on record at the time. As to Van Arsdale, it makes no difference whether Mrs. Findley paid any consideration or not. A creditor, who becomes such after a voluntary conveyance is made, cannot have it set aside unless he can show that the debtor made the conveyance with a fraudulent intent to incur the debt. *Schreyer v. Scott,* 134 U. S. 405, 10 Sup. Ct. 579, 33 L. Ed. 955; *Horbach v. Hill,* 112 U. S. 144, 5 Sup. Ct. 81, 28 L. Ed. 670; *Sheppard v. Thomas,* 24 Kan. 780; *Buckley v. Duff,* 114 Pa. 596, 8 Atl. 188; *Mayer v. Frasch,* 7 Wash. 504, 35 Pac. 409; *Zim v. Brinkerhoff,* 48 N. J. Eq. 513, 22 Atl. 353; *Ayers v. Wolcott,* 66 Neb. 712, 92 N. W. 1036; *Fullington v. N. W. Importers' & Breeders' Ass'n,*

48 Minn. 490, 51 N. W. 475, 31 Am. St. Rep. 663; *Simmons v. Ingram,* 60 Miss. 886; *First National Bank v. Bayless,* 96 Ga. 684, 23 S. E. 851; *Higgins v. White,* 118 Ill. 619, 8 N. E. 808; *Stumph v. Bruner,* 89 Ind. 556.

In *Winn v. Barnett,* 31 Miss. 653, the court said:

"It is true that it has been held in some cases that, where a conveyance by a debtor was fraudulent in its inception as to his creditors at the time, it will be so treated as to subsequent creditors. But these cases must rest upon one of two principles: The property was either so situated that it enabled the debtor to obtain credit upon the faith of it, or the fraudulent vendee was regarded as the trustee under a secret understanding between the parties, and in virtue of such secret understanding bound, at least so far as his word could bind him, to account to the fraudulent vendee; hence the creditor was allowed to be substituted to what was treated as the substantial interest of his debtor, and subject the property to the payment of his debt."

In *Burndage v. Cheneworth,* 101 Iowa, 256, 70 N. W. 211, 63 Am. St. Rep. 382, the court said:

"We think the correct rule is: (1) A conveyance which is merely voluntary, and when the grantor had no fraudulent view or intent, cannot be impeached by a subsequent creditor. (2) A conveyance actually and intentionally fraudulent as to existing creditors, as a general rule, cannot be impeached by subsequent creditors. (3) If the conveyance is actually fraudulent as to existing creditors, and merely colorable, and the property is held in secret trust for the grantor, who is permitted to use it as his own, it will be set aside at the instance of subsequent creditors."

These rules were quoted and approved in *Aldous v. Olverson,* 17 S. D. 190, 95 N. W. 917.

In *Johnson v. Murphy,* 180 Mo. 597, 79 S. W. 909, the court said:

"Chancellor Kent, who maintains the most rigid doctrine in regard to the effect of voluntary conveyances against creditors, after a full examination of the authorities, concedes that actual fraud or fraud in fact must be proved in order to set aside a prior voluntary conveyance at the suit of subsequent creditors. The doctrine thus laid down has been approved and

uniformly maintained in a long line of decisions, and may well be said to be the settled law of this state. *Payne v. Stanton,* 59 Mo. 158; *Boatmen's Savings Bank v. Overall,* 90 Mo. 416 [3 S. W. 64]; *Id.,* 16 Mo. App. 510; *Frank v. Caruthers,* 108 Mo. 569 [18 S. W. 927]; *Lander v. Ziehr,* 150 Mo. 403 [51 S. W. 742, 73 Am. St. Rep. 456]; *Bank v. Simpson,* 152 Mo. 638 [54 S. W. 506]; *Krueger v. Vorhauer,* 164 Mo. 156 [63 S. W. 1098]; *Loy v. Rorick,* 100 Mo. App. 105 [71 S. W. 842]"

In *Nelson v. Vanden,* 99 Tenn 224, 42 S. W. 5, it was held that a voluntary conveyance is valid as to a subsequent creditor who had actual or constructive notice of the conveyance when the debt was contracted, and upon whom no actual fraud was practiced, although existing creditors remain unpaid and the conveyance is fraudulent as to them.

Section 1213, Comp. Laws 1909, in effect limits the creditors who may attack voluntary conveyances to those whose debts were in existence at the time the conveyances were made. That section is as follows:

"Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

While the statute and decisions constantly speak of fraudulent conveyances as being void, it is clear that they are not void, but merely voidable. They are good as between the parties, and can only be set aside upon the suit of creditors. A subsequent creditor, who has not extended credit on the faith of the ownership of the property, is not wronged in any way. A person who has not been wronged cannot invoke the law to redress a wrong done to some other person. No one can take advantage of a fraud, except the person defrauded. The right of action for fraud is not even assignable.

In this case there is no evidence that Van Arsdale extended the credit on the faith of S. S. Findley's ownership of the property, and no evidence that Findley had any fraudu-

lent intent as to Van Arsdale. He obtained nothing himself. His liability to Van Arsdale arose not out of any money or property advanced him by Van Arsdale, but out of his indorsements on notes given by the American Manufacturing Company to Van Arsdale. Another person also indorsed the notes, and, besides, certain stock of the company was also pledged to secure them. All the circumstances tend to show that Findley expected the notes would be paid. The fact that the conveyances from Findley to his wife were recorded tends to rebut any suspicion of actual fraud. Therefore it makes no difference whether creditors, whose debts were in existence at the time the conveyance from Findley to his wife was made, would have the right to set it aside or not. Van Arsdale has no such right, even though the conveyance was voluntary.

The judgment should be affirmed.

By the Court: It is so ordered.