The STATE of Oklahoma on relation of the
COMMISSIONERS OF LAND OFFICE
of said State, Plaintiff in Error,

v.

Bertram M. LEECRAFT, Jr.,
Defendant in Error.

No. 36219.

Supreme Court of Oklahoma.

Jan. 18, 1955.

R. H. Dunn, N. A. Gibson, Shell Bassett, Oklahoma City, for plaintiff in error.

D. S. MacDonald, Jr., Durant, for defendant in error.

324

BLACKBIRD, Justice.

This action was commenced by defendant in error as plaintiff, against plaintiff in error as defendant, to quiet his title to an 80 acre tract of land. Our continued reference to the parties will be by their trial court designations.

Nothing was shown in plaintiff's petition with reference to previous ownership of, or title to, the land except that his title was derived through his Mother, by a warranty deed executed August 31, 1943. In the petition, the alleged cloud on plaintiff's title, which he prayed to have "barred", was briefly referred to as a deficiency in favor of defendant remaining against his Mother, Mamie T. Leecraft, and other unnamed persons, after a sheriff's sale held pursuant to a judgment entered *September 21, 1943,* by the same district court in a "Case No. 12569."

Without disclosing when his mother allegedly acquired the land or how long she "was holding" its title previous to her conveyance to him, or with relation to the judgment above referred to, plaintiff's petition then alleged:

"(3) This plaintiff would further show to the Court that Mamie Thompson Leecraft was holding the bare legal title to the above described real estate and premises for the use and benefit of this plaintiff until he became of age on August 15, 1943, he having been born August 15, 1922. That although the same was executed August 31, 1943 as shown by the office of the County Clerk of Bryan County, Oklahoma in Book 275 at page 91, this plaintiff was in military service of the United States Navy and by reason of said ½hysical absence was unable to handle his civil duties, obligations and affairs and a delay in recording the same resulted by reason thereof until December 9, 1944, during which time defendant's judgment against this plaintiff's immediate predecessor in title resulted as hereinabove set forth in paragraph (2) hereof."

In its answer, defendant admitted that it recovered a personal judgment against Mrs. Leecraft and Bertram N. Leecraft (her husband) in the case referred to in plaintiff's petition, and further alleged:

"that this judgment has been at all times since then and is at present a valid and subsisting judgment against said defendants, and was and is in full force and effect at all times since its rendition.

"3. These defendants specifically deny that Mamie Thompson Leecraft was ever holding the bare legal title to the lands involved in this action for the use and benefit of the plaintiff, Bertram N. Leecraft, Jr., until he attained his legal majority on August 15, 1943, and to the contrary, allege and state that the said *Mamie Thompson Leecraft was the owner and holder of the full legal and equitable title to said lands at all times since January 1, 1920.*

"4. For further answer to the petition of the plaintiff, these defendants state that there was no consideration for the deed from Mamie Thompson Leecraft and her husband Bertram N. Leecraft, Jr., dated August 31, 1943, and that the said deed was executed by the said grantors for the purpose of defeating the rights of their creditors, including these defendants.

"5. For further answer to the petition of the plaintiff, these defendants deny that the deed from Mamie Thompson Leecraft and Bertram N. Leecraft to Bertram N. Leecraft, Jr., was executed on August 31, 1943, as shown on the face thereof, and state further that if the said deed was in fact executed on August 31, 1943, the said deed was not delivered to the plaintiff until *long* after the rendition of the judgment against the grantors therein in Case No. 12569 in the District Court of Bryan County, Oklahoma, and that *at the time of the actual delivery of said deed to the plaintiff herein, the judgment lien in Case No. 12569 had become attached to the property involved* herein, and that the conveyance from Mamie Thompson Leecraft and her husband to this plaintiff

was made subject to the said judgment lien." (Emphasis ours.)

At the trial no evidence was introduced except plaintiff's which consisted merely of his deed executed by his mother and father on August 31, 1943, and recorded December 9, 1944, and the testimony of an' abstractor, D. D. Stewart, who testified that he took the grantors' acknowledgment thereon as a Notary Public. On Stewart's cross examination defense counsel elicited the testimony shown by the following excerpt from the record:

"Q. I wish you would state to the Court how you remember having taken it at that time? A. It so happened that Mr. Leecraft and I had been personal friends for a good many years. Even before he was married we were good friends, and a number of different times he had discussed with me different judgments, relationships or his business involving them. And on this occasion I do remember that he discussed the deed; that *the reason he wanted to execute this deed, and the reason why, as I recall, that his boy had become of age, or would be of age very shortly, and for that reason he wanted to give it to him for being a good, upright boy arrriving at his legal age some token for his appreciation for that*. And this was discussed with me when he told me what he wanted, therefore, I remember specifically why he wanted this deed executed.

"Q. *Do you know what you did with the deed?* A. *I believe the deed was delivered to him for the mutual benefit of the boy.*

"Q. I asked you what you did with the deed? A. I gave it back to Mr. Leecraft." (Emphasis ours.)

Immediately after the witness' last-above-quoted answer plaintiff rested, and defense counsel orally demurred "to the testimony, because it is not sufficient to support the allegations of the petition against the defendant." The only further proceedings had in the cause, as reflected by the Journal Entry of Judgment, were that said demurrer was "overruled and defendant offered no testimony. The cause was thereupon submitted to the court upon argument of counsel and being fully advised in the premises finds that plaintiff is entitled to judgment as prayed in his petition on file herein." From the judgment for plaintiff (in accord with the above-quoted finding) defendant has lodged the present appeal.

 With regard to defendant's allegations of error, its second contention, which we will consider first, is that title to the property did not vest in plaintiff through his deed from his parents until after his return from the United States Navy, in 1944, long after its judgment was entered against said parents in September, 1943. In connection with this argument, defendant cites 15 Am.Jur. 510, sec. 128, to the effect that in order for a deed to be delivered, the grantor must part with possession of, and power of dominion and control over it, for the benefit of the grantee at the time of the delivery; that:

"There is no delivery in law where the grantor keeps the deed in his own possession with the intention of retaining it, particularly if he keeps possession of the property as well, dominion over the instrument must pass from the grantor with the intent that it shall pass to the grantee, if the latter will accept it. Where the proof fails to show that the grantor did any act by which he parted with the possession of the deed for the benefit of the grantee, the question of intent becomes immaterial."

The only evidence counsel can or does point to for support of their contention that plaintiff's deed was not delivered to him until its recording after the entry of its judgment is the statement of the abstractor, Stewart, that after he took the grantors' acknowledgment on the deed he "gave it back to Mr. Leecraft." We think this one line of testimony insufficient (in the absence of any other evidence of any character whatsoever on the subject) to overcome the presumption, which accompanies the recording of a duly executed deed, that it was delivered on the date of its execution. See McKeever v. Parker, 204 Okl. 1, 226 P.2d

425, in which it was also held that the burden of proving non-delivery is upon the party alleging it. Here, we do not think (as the trial court evidently did not) that this bit of testimony is sufficient to discharge defendant's burden in that respect in view of the cited presumption to be overcome. Defense counsel also rely on the above-quoted allegations of plaintiff's petition indicating that he was in the United States Navy on the date the deed was executed, and for that reason, unable to record the deed until his discharge, December 9, 1944. These allegations of fact (which defendants' answer denied and upon which no evidence was offered) are in no respect tantamount to evidence, or to an admission that the deed was not delivered on the date it was executed. A deed may be delivered by mail as well as manually, and the fact that the Notary Public handed the deed back to plaintiff's father immediately after taking the acknowledgment, or even that he might not have seen the deed delivered, is no reason to believe that it was not, even though the grantee may, at that time, have been a navy man, either at home on leave, or on active duty. With no more evidence than is in the record before us, we think effect must be given to the above-mentioned presumption and, in view of the rule that the trial court's judgment must be considered as including every finding and conclusion necessary to support it, we must regard the deed as having been delivered on the date it was executed, which means that (if the deed was valid) it transferred the title to the 80-acre tract therein described as of that date.

Defendant's other contention is that the deed was void as to it under the first part of Tit. 24 O.S.1951 § 10, as having been "made without a fair and valuable consideration". It is noted that the only consideration recited in the deed itself is: "One and No100—Dollars." If the land was reasonably worth much more than that and defendant was a creditor of Mamie and Bertram Leecraft and within the class of those referred to in said statute as " 'all persons to whom the maker is at the time indebted or under any legal liability' ", then the deed was clearly void as to said defendant. Vacuum Oil Co. v. Quigg, 127 Okl. 61, 259 P. 858, 859; Ward v. Wiggins, 73 Okl. 46, 174 P. 231. Defendant points to Stewart's testimony (which plaintiff charges is hearsay and incompetent) as indicating that the deed was a gift and purely voluntary or without any monetary consideration whatsoever. Assuming that this was the case (despite Tit. 15 O.S.1951 § 114, which makes a written instrument presumptive evidence of a consideration) still there is no evidence here to show that on the date of the deed and its presumed delivery, the "makers", or grantoi s, Bertram and Mamie Leecraft, were " 'indebted or under any legal liability' " to defendant. All that the pleadings show is that the deficiency defendant claims to be a lien against the land, arose out of a sheriff's sale, held December 11, 1944, pursuant to a judgment entered September 21, 1943, almost a month after the deed was given. Must we assume, without any more information or evidence in regard to the matter, that because said judgment was entered against them on the latter date, the Leecrafts were indebted to defendant on the earlier date? Neither the record nor the pleadings disclose the nature of the indebtedness, if any, thus reduced to judgment. Neither the judgment nor any part of the record in Case No. 12569, nor any description of the asserted indebtedness it presumably was based upon, is a part of the record before us. It cannot be said with certainty or any degree of unequivocality that because the "debt" was judicially established as such by a judgment dated September 21, 1943, it came into existence on or before the date of the deed, or August 31 of the same year. Even though we were to take judicial notice that generally district court actions are not tried until at least 30 days have elapsed after the filing, we know, as a matter of fact that some debts are incurred and reduced to judgment by confession, or otherwise, in a shorter period than that. The facts concerning defendant's claim (referred to as an indebtedness) should have been shown by evidence or stipulation since they were never shown nor admitted by way of pleading, and, in the absence of such showing and of any dis-

position on the part of the defendant to introduce any such evidence, despite its burden to prove the general conclusion of its Answer that the deed .was fraudulent, State ex rel. Mothersead v. Mobley, 112 Okl. 152, 241 P. 155; Culp v. Trent, 99 Okl. 112, 226 P. 348, we think the trial court was correct in rendering judgment for plaintiff. There is nothing inherently invalid about a deed from parents to a son, even if made without other consideration than $1, or love and affection. Although such a relationship between the parties to a "voluntary" deed has been referred to in fraudulent conveyance cases as one of the "badges of fraud," Vacuum Oil Co. v. Quigg, supra, it, in itself, does not discharge the burden of the party asserting such deed's fraudulent character, to prove same, unless he or it is an *existing* creditor in which event, under the first part of sec. 10, supra, such proof is unnecessary.

■ Nor would such proof be unnecessary in this jurisdiction, if we assumed that the debt was not incurred until *after* the deed was given, and that defendant was a "subsequent", as distinguished from an "existing", creditor. Though there appears to be a conflict of authority in other jurisdictions operating under different fraudulent conveyance statutes, see 24 Am.Jur., Fraudulent Conveyances, § 146; 37 C.J.S., Fraudulent Conveyances, § 137, the question seems to be settled in this jurisdiction against application of the statute to subsequent creditors. See Rouss v. Crawford, 69 Okl. 110, 170 P. 688; Van Arsdale v. Findley, 37 Okl. 425, 132 P. 135, 137. In the latter case this Court in speaking of the statute involved by its then citation ("Section 1213, Comp.L.1909") said it "in effect limits the creditors who may attack voluntary conveyances to those whose debts were in existence at the time the conveyances were made." After quoting said statute the Court also said:

"While the statute and decisions constantly speak of fraudulent conveyances as being void, it is clear that they are not void but merely voidable. They are good as between the parties, and

can only be set aside upon the suit of creditors. A subsequent creditor, who has not extended credit on the faith of the ownership of the property, is not wronged in any way."

Of course in that case, as in Rouss v. Crawford, supra, the Court took note of the fact that the alleged fraudulent deed was *filed of record before* the asserted "creditor" extended any credit to the grantor therein named and that is not the situation here. On the other hand, as already indicated, it does not appear here, when the record title to the land was placed in the name of the grantors or either of them with relation to the time the defendant may have extended credit to them. Presumably plaintiff's parents were in possession of a deed vesting "legal title" in them when they executed the deed in question to plaintiff, but we do not know the date of such deed and there is no intimation in the pleadings, or elsewhere in the record, as to when it was recorded. All that we have here is the allegation of plaintiff's verified petition that his mother "was holding the bare legal title to the * * * real estate * * * for the use and benefit of this plaintiff until he became of age * * *", and the allegation in defendant's answer that: "Mamie Thompson Leecraft was the owner and holder of the full legal and equitable title to said lands at all times since January 1, 1920. (Incidentally, if plaintiff's allegation was true and he was the *real* owner of the land, his Mother holding merely the "paper title" thereto, then the deed by which title was placed in plaintiff could not have been a fraudulent conveyance. Fink Bonding & Ins. Co. v. Stevens, 186 Okl. 439, 98 P.2d 898.) Perhaps the lightest part of defendant's burden was to prove that the record title to the land stood in the name of Bertram and Mamie Leecraft, or one of them, at the time their obligation to it arose. In this connection see Streeter v. State ex rel. Shull, 154 Okl. 160, 7 P.2d 636. It made no effort to do this. Thus there is no evidential basis for the conclusion that it was an "existing" creditor of theirs or either of them, on August 31, 1943, when their deed must be presumed to have been delivered to

**328**

plaintiff. As the burden was upon defendant to establish that the deed was fraudulent under the statute which it claimed rendered it so, and we cannot say that the trial court's judgment (which in effect held that defendant failed to do this) is clearly against the weight of the evidence, said judgment is affirmed.

WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, ARNOLD and JACKSON, JJ., concur.

JOHNSON, C. J., and HALLEY, J., dissent.