## ALDOUS V. OLVERSON.

1. In an action by a wife against a sheriff for seizing her goods under an execution against her husband and others, the court admitted the sheriff's return on the execution containing statements not his duty to make, to the effect that the judgment creditor had directed the levy, and all the defendants had consented to it, and agreed to pay their pro-

portionate share. but that afterwards, the husband, refusing to pay, the sheriff sold the husband's property. Held, that on no theory was this return evidence against the wife, she not being a party.

2. After a husband has duly transferred property to his wife, an execution was issued against him on a subsequent incurred liability as surety on a bond, and property of the wife was levied on. Held, that in an action by her against the sheriff for the illegal seizure, an affidavit made by the husband claiming some of the property levied on as being exempt was not admissiible against the wife, it not appearing to have been made with her knowledge.

3. Evidence that the husband had listed the property with the assessor was not competent against the wife.

4. There was evidence for the sheriff that the bond signed by the husband contained a statement that he was the owner of certain of the property. Held, error to exclude evidence for plaintiff of statements made by the husband, at the time of signing the bond, as to property owned by him.

5. It was error to instruct that a sale of all of a man's property when he is largely in debt is evidence of fraud, the evidence showing that the husband had some debts at the time of the transfer, but not that he was largely indebted.

6. Testimony by a wife in supplementary proceeding on an execution against her husband is within Comp. Laws 1887, § 5260, declaring that a wife cannot be examined for or against her husband without his consent; therefore such testimony taken without his consent is not admissible to impeach the wife in an action by her against the sheriff for seizing her property under the execution.

7. A conveyance of property by husband to wife, duly recorded, and not made with intent to defraud subsequent creditors, could not be complained of by them, irrespective of intent as to existing creditors.

(Opinion filed July 1, 1903.)

Appeal from circuit court, Clark county; Hon. JULIAN BENNETT, Judge.

Action by Marinda Aldous against William Olverson. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

*W. S. Glass, M. E. Sheldon* and *S. H. Elrod,* for appellant.

A voluntary conveyance is good as against subsequent creditors, unless executed as a cover for future schemes of fraud.   Moore v. Page, 111 U. S. 117; Hinde v. Longworth, 24 U. S. 11, Mattingly v. Nye, 75 U. S. 370; Kehr v. Smith, 87 U. S. 31; Smith v. Vodges, 92 U. S. 183; Jones v. Clifton, 101 U.S. 225; Graham v. LaCrosse M. R. Co., 102 U. S. 148; Clark v. Killiam, 103 U. S. 766; Wallace v. Camfield, 106 U. S. 260; Horvach v. Hill, 212 U, S. 144.

A gift made by a husband to his wife, in good faith, and not for the purpose of hindering, delaying or defrauding his creditors and at a time when the husband is not owing anything, is not void, but is valid in all respects and for all purposes. Tootle v. Caldwell, 30 Kansas 125; Taylor v. Eatman, 92 N. Car. 601; Wheeler & Wilson Mfg. Co. v. Monahan, 63 Wis. 198.

*S. A. Keenan* for respondent.

If a conveyance is actually fraudulent as to existing creditors, and merely colorable. and the property is held in secret trust for the debtor, who is permitted to use it as his own, it will be set aside at the instance of subsequent creditors.   Brundage v. Cheneworth et al., 70 N. W. 211; Banning v. Marlean; 133 Cal. 485; Gilliland v. Jones, 144 Ind. 662; O'Kane v. Vinnedge, 55 S. W. 711: Rogers on Domestic Relations, Sec 260.

If the execution of a voluntary conveyance, however meritorious in itself, leaves the donor with insufficient property to meet his existing liabilities, it is fraudulent and void.   14 A. & E. Encycl. of L., 2nd Ed., 302

CORSON, J.   Plaintiff, the wife of C. H. Aldous, instituted this action against the defendant, sheriff of Clark county, to

recover the value of certain live stock seiz-d and sold by him under an execution against her husband. The case was tried by a jury, and, the verdict being in favor of the defendant, the plaintiff has appealed from the judgment entered thereon.

It is disclosed by the evidence that in 1897 the said C. H. Aldous conveyed to the plaintiff a half section of land including their homestead and all his personal property; that the deed was immediately recorded, and a bill of sale filed in the register of deeds office. There was evidence tending to prove that at the time of the conveyance the husband was indebted, in connection with other parties, to the amount of a few hundred dollars, but the precise amount does not appear. In 1898 the said C. H. Aldous became a surety upon a bond given by a party engaged in the sale of intoxicating liquors, and in an action subsequently brought upon this bond against the principal and his sureties a judgment was recovered, and thereupon an execution was issued and placed in the hands of the defendant, as sheriff, and the property in controversy was seized and sold thereunder.

A motion for new trial was made and denied. The plaintiff contends that the motion should have been granted for the reasons that the evidence was insufficient to justify the verdict, and for errors of law alleged to have been committed in admitting and excluding evidence, and for alleged errors in the court's instruction to the jury.

We will first consider the alleged errors of law occurring at the trial. In the specifications of error in the bill of exceptions relied on it is stated that the court erred in admitting in evidence, over the objections of the plaintiff, that part of the defendant's exhibit No. 3, being the execution and return of the

17 S. D.—11

officer thereon, which contains statements it was not the duty
of the officer to make.    The part of the return which seems to
have been objected to is as follows: "I further certify that
immediately upon the receipt of the execution in this case I
was directed by the attorney for the judgment creditors to levy
upon the personal property of each of the said defendants for
the proportionate share of each of the said defendants, and
each of the said defendants also consented and agreed that
such levy be made, and that each would pay his proportionate
share of the said judgment.    That afterwards all of the said
defendants paid their respective proportionate shares, and as
the same were paid the levies were released, except defendant
C. H. Aldous, who afterwards refused to pay, and I proceeded
to and did sell his property as aforesaid, for the satisfaction of
the balance due on said judgment."    The admission of this
part of the return in evidence was clearly error, and was pre-
judicial to the plaintiff.    It was no part of the officer's duty to
certify and return as to proceedings he was directed to take
by the attorney for the judgment creditor, or that each of the
defendants in that execution, including C. H. Aldous, had agreed
to pay his proportionate share as a surety of the judgment
creditor, and afterwards that Aldous refused to pay the same.
It is not competent for an officer to make such recitals in his
return, and bind the judgment debtor; and certainly under no
theory could the recitals or statements be admitted in evidence
as against the plaintiff in this action, she not being a party to
the execution upon which the return was made.

The next error of law specified is that the court erred in
admitting in evidence Exhibit 1.    This exhibit purported to be
an affidavit made by C. H. Aldous, the husband, claiming cer-

tain grain seized by the sheriff under the execution against him, and demanding that the same be returned as exempt from levy and sale on execution. This exhibit was objected to for the reason that it did not refer to the property involved in this action, and that it is in no way binding on the plaintiff. The affidavit and demand for exemption was made long subsequent to the transfer to the plaintiff of the property involved in this action, and so far as the record discloses, was not made with the knowledge or under the direction of the plaintiff. If it is to be regarded as a claim by the husband that he still had an in- terest in the grain, it was not proper evidence against the plaintiff in this action, as no rule of law is better settled than that the statements of the grantor or vendor in disparagement or impeachment of the title of the vendee or grantee, after the transfer has been made, is inadmissible. Upon this subject Mr. Greenleaf, in his work on Evidence, says: "While the declarant is the only party in interest, no harm can possibly result from giving full effect to his admissions. He may be supposed best to know the extent of his own rights, and to be least of all disposed to concede away any that actually belonged to him. But an admission, made after other persons have ac- quired separate rights in the same subject-matter, cannot be received to disparage their title, however it may affect that of the declarant himself. This most just and equitable doctrine will be found to apply not only to admissions made by bank- rupts and insolvents, but to the case of vendor and vendee, payee and endorsee, grantor and grantee, and generally to be the prevailing doctrine in all cases of rights acquired in good faith previous to the time of making the admissions in ques- tion." 1 Greenl. on Ev. § 180; 1 Jones on Ev. § 246; 1 Am. &

Eng Ency. of Law, 670.   As before stated, the plaintiff herein was not a party to the action brought against her husband as surety upon the bond, and hence she was not bound by his statements in regard to the ownership of the property he had previously conveyed to her.   The evidence was not offered to impeach Aldous, as he was not a witness in this action.   The court, therefore, clearly erred in admitting this evidence.

It is further specified that the court erred in admitting in evidence defendant's Exhibit 9, which purported to be a statement made by C. H. Aldous, on an ordinary listing blank used by assessors, describing the real and personal property conveyed to the plaintiff, with the usual affidavit annexed thereto. It does not affirmatively appear from the record that the plaintiff in this action had any knowledge of the listing of the property by her husband, and it was, therefore, incompetent and immaterial as against her.   It, like the demand for exemption, was no more than a statement by Aldous that he claimed the property. and tended to impeach the title of the plaintiff, as grantee, to the same.   It was not competent to bind her by such declarations.    There was evidence on the part of the defendant tending to prove that the bond which the husband signed as surety contained a statement that he was the owner of a quarter section of land.   Plaintiff called as a witness one G. D. Warner, and he was asked the following question:   "Will you tell the jury what statements he (Aldous) made at the time of signing the bond as to his responsibility, or property that he owned?"   This question was objected to, and excluded by the court, probably upon the theory that it tended to contradict or vary the terms of a written instrument.   But in this view the court was clearly in error.   The validity or invalidity of the

bond was not the subject of the controversy in this action. Undoubtedly, if the controversy had been as to the validity of the bond, this evidence would have been inadmissible, but for the purpose of showing that Aldous, at the time he executed the bond, stated that he was not the owner of any real property, and that he was informed by the party taking the bond that the statement that he was such owner was merely a matter of form, was competent to show what Aldous stated at the time in regard to the ownership of this property for the purpose of explaining the evidence, and removing from the minds of the jury the impressions that defendant's evidence would naturally produce. The only object of the evidence on the part of the defendant was to show that at that time Aldous claimed to be the owner of a part of the property that he had conveyed to the plaintiff. Certainly the statement made by him at the same time to the parties taking the bond that he did not own any of the property was competent, and should have been admitted as evidence on the part of the plaintiff in rebuttal of defendant's evidence as to the statements appearing upon the bond.

It is further specified that the court erred in admitting the evidence of the shorthand reporter as to the evidence of the plaintiff taken at the hearing of the referee before whom the husband was being examined on supplementary proceedings for the purpose of contradicting the plaintiff, said testimony having been given by the plaintiff before the referee without, so far as the record discloses, the consent of her husband. Section 5260, Comp. Laws 1887, provides: (1) "The husband cannot be examined for or against the wife without her consent; nor a wife for or against her husband without his con-

sent." The Supreme court of Wisconsin, in Blabon v. Gilchrist, 67 Wis. 38, 29 N. W. 220, in speaking of the competency of the husband or wife to testify against the other in supplementary proceedings, says: "The proceeding, so far as it is an adversary proceeding, is solely against the judgment debtor, and no issue can be tried by the commissioner between a third person and the plaintiff in the judgment as to the fact whether such third person has property in his hands belonging to the defendant. The husband is, therefore, not a competent witness in such proceeding against his wife, any more than he would be in any other action against her"—citing a number of Wisconsin cases. It was the duty of the referee, therefore in the case at bar, to have refrained from examining the plaintiff in the supplementary proceedings, unless with the consent of her husband, and the testimony elicited from her in that proceeding in violation of the statute could not properly be used to discredit or impeach her testimony on the trial of this action. The admission, therefore, of such impeaching testimony, was clearly erroneous, and the same should have been excluded under the objections of the plaintiff.

It is further claimed that the court erred in its instruction to the jury that an assignment or sale of all of a man's property when he is largely in debt naturally excites the suspicion of fraud, and is, therefore, evidence of fraud. This portion of the charge was excepted to on the ground that the instruction was not applicable to the case, there being in fact no evidence that Aldous was largely indebted, and consequently this statement in the instruction of the court was calculated to prejudice the jury, and mislead them into giving an erroneous verdict. The jury would naturally assume from this instruction that the husband was largely indebted at the

time he made the transfer of his property to his wife. The evidence did not tend to prove that he was largely indebted, but only that he, in connection with others, was indebted for some farm machinery. When an instruction is so worded as to lead the jury to infer the existence of a state of facts not warranted by the evidence, it is good cause for reversing the judgment.

The court further instructed the jury: "Should you find, as claimed by the plaintiff, Marinda Aldous, that some time in 1897, at the time her husband was free from indebtedness, that he made the transfer and gave her all his property, and that the transfer was made in good faith, and was made without intent to defraud creditors then existing or subsequent creditors of the said Charles H. Aldous, as claimed by the plaintiff in this action, in that event you find for the plaintiff on all the issues." It will be noticed from this instruction the jury could not find for the plaintiff should they believe from the evidence that the transfer was made with the intent to defraud then existing creditors of Aldous, though satisfied that there was no intent to defraud subsequent creditors. The court had previously instructed the jury as follows: "The jury are instructed that, in order to find a verdict for the defendant, William Olverson, in this case, it is necessary to find from all the evidence that at the time when the property in question was transferred from C. H. Aldous to Marinda Aldous, this plaintiff, that there was an express design and specific intent to defraud the subsequent creditor who obtained the judgment against C. H. Aldous which has been shown in this case, or subsequent creditors generally." It will be observed that the two instructions are clearly in conflict, and in our opinion, the latter cor-

rectly stated the law applicable to this case. In order for the jury to find for the defendant, it was necessary for them to find that the conveyance was made by Aldous to his wife for the purpose of defrauding the judgment creditor in this action or subsequent creditors generally. The fact, if such it was, that Aldous intended to defraud his creditors existing at the time the conveyance was made, would not give subsequent creditors any right to complain, unless the conveyance was also made with intent to defraud subsequent creditors, or in pursuance of some conspiracy or collusion with the plaintiff in this action. One who is not a creditor at the time the conveyance is made, so long as the conveyance is not withheld from record, and was not made with intent of defrauding subsequent creditors, is not prejudiced by the conveyance. Schreyer v. Scott, 134, U. S. 405, 10, Sup. Ct. 579, 33 L. Ed. 955; Todd v. Nelson, 109 N. Y. 316, 16 N. E. 360; Cole v. Brown, 114 Mich. 396. 72, N. W. 247, 68 Am. St. Rep. 491; Trebilcock v. Big Mo. Min. Co., 9 S. D. 206, 68, N. W. 330; Smith v. Vodges, 92, U. S. 183, 23 L. Ed. 481; Moore v. Page, 111, U. S. 117, 4 Sup. Ct. 388, 28 L. Ed. 373; Jones v. Clifton, 101 U. S. 225, 25 L. Ed. 908; Brundage v. Cheneworth, 101 Iowa, 256, 70 N. W. 211, 63 Am. St. Rep. 382.

In the latter case the Supreme Court of Iowa, after a full review of the cases decided by that court, lays down the rule applicable to this class of cases as follows: "We think the correct rule is: (1) A conveyance which is merely voluntary, and when the grantor has no fraudulent view or intent, cannot be impeached by a subsequent creditor. (2) A conveyance actually and intentionally fraudulent as to existing creditors, as a general rule, cannot be impeached by subsequent credit-

ors.  (3) If a conveyance is actually fraudulent as to existing creditors, and merely colorable, and the property is held in secret trust for the grantor, who is permitted to use it as his own, it will be set aside at the instance of subsequent creditors.  The second rule above laid down is subject to some exceptions, among which may be mentioned cases in which the conveyance is made by the grantor with the express intent and view of defrauding those who may thereafter become his creditors; cases wherein the grantor makes the conveyance with the express intent of becoming thereafter indebted; cases of voluntary conveyances when the grantor pays existing creditors by contracting other indebtedness in a like amount, and wherein the subsequent creditors are subrogated to the rights of the creditor whose debts their means have been used to pay; cases in which one makes a conveyance to avoid the risks of losses likely to result from new business ventures or speculations." It will be noticed by the second rule laid down that "a conveyance actually and intentionally fraudulent as to existing creditors, as a general rule, cannot be impeached by subsequent creditors," though it is subject to exceptions, among which may be mentioned cases in which the conveyance is made by the grantor "with the express intent and view of defrauding those who may thereafter become his creditors, or cases wherein the grantor makes the conveyance with the express intent of becoming thereafter indebted "  Assuming, however, for the purposes of this decision, that Aldous was indebted at the time he executed the conveyance of the real and personal property to his wife, he was not indebted to the party seeking the enforcement of the execution against him.  He had not then, as we have seen, become a surety upon the bond, nor was

there any evidence tending to prove that he contemplated becoming such surety, or that he executed the conveyance to his wife for the purpose of defrauding subsequent creditors. Such creditors, therefore, are not in a position to assail the conveyance.

The judgment of the circuit court and order denying a new trial are reversed.