HEYING, Appellant, v. ROANE, Respondent.

(147 N. W. 269.)

**1.   Witnesses—Impeachment—Cross-Examination of Husband.**

Where, in an action by a wife for conversion of a chattel claimed by her, but sold under execution against her husband, the husband, on direct examination, testified the chattel belonged to the wife, testimony drawn from him on cross-examination, that he had mortgaged the property as his own,

was competent to impeach him, though his admissions were not binding on the wife.

2. **Husband and Wife—Ownership of Property—Sufficiency of Evidence—Property Rights of Wife.**

In a suit by the wife for conversion of a horse claimed by her, the fact that her husband on several occasions gave a mortgage upon the horse is not binding upon her and is no evidence that she was not the owner, for a wife is not bound by the acts of her husband in relation to her property with which she has no connection.

3. **Execution—Sale Under, of Property Taken in Replevin—Right of Officer—Title Under Sale.**

Where a coroner, under process of claim and delivery, took possession of chattels then held by sheriff under an execution, held, that a subsequent sale under the execution by a deputy sheriff was void, and the buyer acquired no title thereunder.

4. **Execution—Sale—Claim of Owner, Assertion of—Estoppel.**

A wife, claiming to own a chattel taken under execution against her husband, brought an action in claim and delivery against sheriff before the execution sale, and the coroner took the property from sheriff and placed it in the barn of a third person for safe keeping. The wife also informed the officers, before such sale, that the property was her own when levied upon. Held, that the wife was not estopped, as having stood by and failed to assert title, as against the third person, who purchased at the execution sale with knowledge of the facts.

(Opinion filed May 18, 1914.)

Appeal from Circuit Court, Tripp County. Hon. WILLIAM WILLIAMSON, Judge.

Action by Clara Heying against George Roane, for conversion of a horse. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

*N. D. Burch,* and *John W. Shevlin,* for Appellant.

There is no evidence that any other person than plaintiff owns the property.

There is no evidence that plaintiff made any representations to defendant, nor that she remained silent at any time he was present when it was her duty to speak.

There is no element of estoppel presented against her; the court should not have instructed thereon, and it was reversible error to do so.

There has been no attempt to connect the plaintiff with the chattel mortgage.

The officers of the law, who were sworn to support the laws of this state, deliberately seized the plaintiff's horse and sold it, knowing that she believed that she was protected by a suit she had commenced. She was not present when the sale was made.

The testimony of Joseph H. Heying was not within the scope of cross-examination; could not bind the plaintiff in any way unless she had knowledge of such mortgaging of her property, which knowledge on her part was not attempted to be shown, was irrelevant.

*R. H. Molitor,* for Respondent.

There was sufficient evidence of title, or ownership of this horse, in Joe H. Heying, upon which the jury might base a verdict.

Where the property seized is at the time in the possession of (execution) defendant who is apparently the owner, and another person, who is the real owner, although informed of the levy, gives the officer no notice of his claim, and the officer does not otherwise know of the claim, the owner is estopped from suing the sheriff for selling the goods levied on. 35 Cyc. 1686, (Sheriffs); Stevens v. Head 24 So. 738.

When a person having title to property, knowingly stands by and suffers it to be sold under a judgment or decree, without asserting his title or making it known to the biddders, he cannot thereafter set up his claim. 16 Cyc. 764, (Estoppel), and cases cited.

The trial court properly overruled the objection of the plaintiff to the question asked Joe H. Heying in cross-examination as to his having "mortgaged the horse on two different occasions as his own."

The question was material and relevant on his direct examination. 40 Cyc. 2484; 40 Cyc. 2480-81.

There is no evidence that such demand and refusal for the return of this horse was never made upon the defendant prior to the judicial sale, nor that he had any knowledge that she was the owner of the horse, and the trial court should therefore have sustained the motion for directed verdict. 17 Cyc. 1201.

McCOY, J. Plaintiff brought this action in conversion to recover of defendant the value of one certain horse claimed to be owned by her. There was verdict and judgment for defend-

ant, and the overruling of a motion for a new trial, and plaintiff appeals, assigning errors of law and insufficiency of the evidence.

From the record it appears that levy was made upon said horse, together with some cattle, under an execution and judgment against the husband of appellant, and to which execution and judgment she was not a party, and that said horse was sold to defendant to satisfy said execution at an alleged sheriff's sale. The defense interposed by respondent was that the said horse, at the time of said levy and sale, was the property of Jos. H. Heying, the husband of plaintiff, and that respondent purchased said horse from the sheriff on execution sale, wherein said Jos. H. Heying was execution defendant and debtor, and that plaintiff ought not to be admitted to say that she is the owner of said property for the reason that she interposed no claim thereto until the beginning of this action; that she at all times knew of the seizure and was well aware of the sale of said property under said execution, and at no time asserted her ownership thereto, and that defendant had no knowledge as to her claim of ownership, until the beginning of this action.

[1] On the trial plaintiff testified that she was the owner of said horse and always had been such owner since it was foaled.   Plaintiff also called as a witness her husband, Joseph H. Heying, who testified that plaintiff, his wife, was the owner of said horse and had been since it was foaled.   On cross examination, her husband, over the objections of plaintiff, was permitted to testify that on two different occasions he had mortgaged said horse as his own.   This ruling of the court is now assigned as error.   We hold that the ruling was correct. It was probably somewhat unwise for plaintiff to call her husband as a witness.   While his statements and admissions are not evidence, and are not binding against her, yet, when she called him as a witness and he testified that she was the owner, the opposite party had the right on cross-examination, for the purposes of discrediting and impeaching his testimony to show that he had done acts inconsistent with his testimony.

[2] Appellant contends that the evidence is insufficient to justify the verdict, in that the evidence clearly shows that she was the owner of said horse, and that there was no evidence that she was not such owner, and that there is no evidence that she

estopped herself by word, act or deed, from asserting her claim thereto. We are of the view that appellant is right in this contention. There is no testimony whatever in this case tending in any manner to show that she was not the owner of said horse. The fact that her husband on several occasions gave chattel mortgages upon this horse is not binding upon her, and is no evidence at all that she was not the owner. While the giving of these mortgages was evidence tending to discredit and impeach the husband's testimony, the giving of such mortgages did not in any manner tend to impeach her testimony. There is nothing whatever tending to show that she had any connection with or knowledge of the giving of the mortgages. A married woman in this state has the right to own and possess personal property separate and apart from her husband, and she is not bound by the admissions or acts of the husband in relation thereto, with which she has no connection. Aldons v. Alverson, 17 S. D. 190, 95 N. W. 917; 1 R. C. L. 515. Jones Ev. 260-263.

[3, 4] There is no testimony in this case tending to show that she made no claim to said horse until the beginning of this action, or that she stood by and asserted no claim to said property when it was being sold at sheriff's sale, or that defendant had no knowledge of her claim until the beginning of this action while the testimony does conclusively show to the contrary. The testimony shows that prior to the execution sale appellant herein as plaintiff commenced another action against the sheriff as defendant, and by claim and delivery process, in the hands of the coroner, took said property from the sheriff, and placed the said horse under said process in the barn of respondent to keep until the expiration of the time during which the same might be rebonded by the defendant in the claim and delivery proceedings, and after the expiration of the three days permitted by law for such rebonding by a defendant the coroner went to respondent's barn to deliver said horse to appellant, but ascertained that the horse was gone; that the deputy sheriff who made the levy under the execution had taken the horse out of respondent's barn and made the sheriff's sale thereof to respondent under the execution against appellant's husband, and that the horse had disappeared. In the first place, the deputy sheriff who held the execution had no lawful right under the circumstances to thus sell

the horse at said execution sale. The coroner as an officer of the court had lawful possession of the horse for the purposes of the claim and delivery process, and this deputy sheriff was an unlawful wrongdoer in taking said horse and making the execution sale thereof, which sale was wholly unauthorized and void, for the reason that the sheriff had then ceased to be in lawful possession so that he could make a valid sale. One officer cannot thus take property from another officer without some process authorizing him so to do. This reason, and none other, would entitle appellant to a recovery for the value of the horse. The sale being void defendant could acquire no right thereunder, as against appellant who was not a party thereto. When property is taken in claim and delivery proceedings from a sheriff it is also taken from all his deputies who are no more than his agents acting under him. When a coroner by a lawful process takes property held under execution from the sheriff, it is also taken from any and all his deputies, who thereafter have no right to retake such property except by order of the court or some new lawful process. The respondent as the owner of the barn was the caretaker and keeper of said horse for the coroner, and the sheriff, nor any of his deputies, had any right to then interfere with the possession thereof. Again, appellant testified that she told deputy sheriff Splawn that the horse belonged to her at the time the levy was made. Splawn did not deny this but said he could not remember what she said,—that she said something about the black horse, but he could not remember what it was. He seemed to remember what he said and what every one else said, but forgot what plaintiff said to him. It is an astonishing case of forgetfulness. The attorney for the execution creditor was also on the ground at the time of the levy under the execution, and testified that when Splawn delivered appellant notice of levy, he told her that he had come after the black horse, and she said nothing except that they had been harrassed in this proceedings and that if he took the horse he would bring it back again as he did the cattle. This clearly indicates that appellant claimed the black horse, and was not voluntarily giving it up to be sold on execution. There is nothing in the testimony that tends to dispute appellant's testimony that she claimed the horse as her property prior to the execution sale. Splawn forgot what she said. Molitor, the attorney, cor-

roborated the plaintiff. The fact that she brought suit against the sheriff, by claim and delivery proceedings, conclusively shows that she made such claim prior to the sale, and was doing all in her power by lawful means to secure possession of the horse. There is no evidence that she was present at the sale. It appears that a previous levy also had been made upon some cattle, and that the husband had claimed the cattle as exempt, but did not claim the horse as his exempt property but stated in his notice that the other property belonged to the members of his family. The respondent acted as one of the appraisers under the notice claiming exemption, and appraised the cattle and the black horse. We are of the view that appellant did not stand by and see the black horse sold at sheriff's sale without asserting her claim thereto.

The judgment and order appealed from are reversed and a new trial ordered and the cause remanded.